# McGeary's Appeal.

1. Land conveyed to a wife was sold under a mortgage by herself and husband, in a contest between creditors of the husband in the distribution of the proceeds, alleging that the property was his, the wife was a competent witness for the creditors.

2. A mortgage of the land by both recited that it had been conveyed to the wife; the mortgage, being defectively acknowledged, did not bind the wife. *Held*, that the recital did not estop the mortgagee, as against a subsequent mortgage of both, from alleging that the land was the husband's.

3. Evidence in this case establishing that the land was the husband's.

November 13th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Court of Common Pleas of *Allegheny county:* of October and November Term 1872, No. 80.

In the distribution of the proceeds of sheriff's sale of real estate, sold by a levari facias on a mortgage, The Pittsburg Insurance Company against John D. Groves and Sophia his wife.

John S. Ferguson, Esquire, was appointed auditor to report distribution.

These facts appeared by the report of the auditor.

The title to the land was in Sophia Groves, one of the defendants, by deed dated September 11th 1868, from Frederick Weihr.

The mortgage under which the land was sold was by Groves and wife; there was no dispute that this mortgage and also a mechanic's lien to S. & W. H. Martin, should be paid out of the proceeds of the sheriff's sale.

Frederick Weihr, on September 14th 1868, entered a judgment for purchase-money against John D. Groves, on which there was due a balance of $125 with interest.

Groves and wife made another mortgage, dated July 29th 1869, and recorded the same day, to The Pittsburg Insurance Company for $1000 on the premises sold.   The certificate of the acknowledgment of this mortgage by Mrs. Groves was not in accordance with the Act of Assembly, and it was claimed, therefore, that it did not bind her estate.

Groves and wife, on the 19th of November 1870, made a mortgage on the same premises to H. S. McGeary for $700.   This mortgage was properly acknowledged so as to bind the estate of both mortgagors, and was recorded on the day of its date.

After payment of undisputed liens, the fund was insufficient to pay the other liens, and the contention was between Weihr's judgment and the insurance company's second mortgage on the one side, and McGeary's mortgage on the other.

The question was whether the premises were either actually or in contemplation of law the property of the husband, and therefore bound by the liens of the Weihr judgment and the insurance company's second mortgage.

Groves and wife appeared before the auditor, but neither claimed any of the fund nor disputed the claims made to the auditor on it.

The second mortgage to the insurance company contained a recital that the premises mortgaged were the same which Weihr had conveyed " to *Sophia Groves*."

The facts showing the ownership of the premises are fully stated in the opinion of Judge Read.

On the hearing before the auditor the insurance company called Mrs. Groves as a witness.   She was objected to by McGeary, on the ground that she could not be admitted to testify against her husband.   The auditor received her testimony.

The auditor, after stating the facts, said :—

" *   *   *   The facts as above stated, showing how and upon what consideration Mrs. Groves acquired title to the Mahon street property, and the nature of the business in which her husband was engaged at the time she acquired title, and its continuous nature, clearly indicate that no such title vested in her as would avail her against the general creditors of her husband at least.   The fact that she had $400 or $500 at the time of her marriage would avail her nothing.   Her own testimony clearly shows that she gave whatever she had to her husband to use as he pleased.   She says: ' I leave everything to my husband; I don't charge my mind with

anything outside.' The vesting, then, of the title in her was clearly an unreasonable provision for her. It was in fact a gift to her of all her husband's estate, although he was engaged in a business which certainly was exposed at least to some hazards. When to this testimony we add the presumption of law, that even though the title to real estate stands in the name of the wife, it is presumed to belong to the husband, it is evident that the title of Mrs. Groves will not stand at least against the general creditors of the husband.

" By the expression ' general creditor ' I mean one who has done no act which would estop him from denying the title of the wife, if any such there can be.

"Are, then, Frederick Weihr and the Pittsburg Insurance Company exceptions to the general rule, as stated by the auditor, under the facts of this case ?

" It must be borne in mind that it is not Mrs. Groves who is taking the benefit of that rule of law which provides that her real estate shall not be encumbered, except by writing duly acknowledged ; it is not she who is asserting that Weihr and the Pittsburg Insurance Company have recognised her title and are now estopped from denying it.

" Ought, then, McGeary to be permitted to allege that which Mrs. Groves does not see fit to claim ?

" It will be seen, by reference to the testimony of H. S. McGeary and W. K. Jennings, that the mortgage of Groves and wife was taken by McGeary, with full knowledge of the mortgage of the insurance company, which he now disputes being on record.

" As shown by the authorities before cited, a married woman in this state cannot acquire lands through her husband, and hold them against his creditors. The legal presumption is, that though she takes the title, they belong in fact to her husband. Applying, then, these rules to the case in hand, how does it stand ?

" Take, first, the judgment of Frederick Weihr. When Mr. McGeary found the title to the property in question standing in the name of Mrs. Groves, he had no right to assume that it belonged to her. The presumption was that it belonged to her husband. When McGeary took his mortgage, the Weihr judgment was already entered on the lien docket, and by presumption of law bound the very property on which he (McGeary) was taking the mortgage. * * * If, then, McGeary cannot allege estoppel, who can ? Mrs. Groves does not. Will the law do it for her ? Estoppel is a creation of equity. With what equity could Mrs. Groves ask that Weihr should not be paid ? His judgment, the testimony shows, was a purchase-money judgment. She got the land, and should pay the price. As against Weihr even she could not hold the land without paying him for it. There is no allega-

[McGeary's Appeal.]

tion of any understanding or agreement that Weihr was to look to Groves personally for the balance due him, and not to the land. At equity, then, Weihr could have recovered his money out of the land, and the auditor therefore awards him his claim in full with costs, to wit: debt and interest, $144.10 ; costs, $5.15, and attorney's commission, $7.30.

" Can McGeary, then, allege estoppel as against the second mortgage of the Pittsburg Insurance Company ? As in Weihr's case, this depends upon whether they have done any act which tends to his prejudice. He alleges that they have in this, that they, in taking their mortgage, took it with the recital that the lot described in it was the same lot which Frederick Weihr and wife conveyed to Sophia Groves. Can it be said that this amounts to an agreement, on the part of the company, with Mr. McGeary, that the ownership, as well as the title to the lot in question, was in Mrs. Groves ?

" The effect of the mortgage was to bind the title, if any he had, of John D. Groves as well as that of Mrs. Groves.. In contemplation of law John D. Groves did own it. Mr. McGeary is presumed to know the legal presumption. The recital in the mortgage was in accordance with the fact that Weihr did actually make a deed for this property to Mrs. Groves, but the making of that deed does not overturn the legal presumption that the ground conveyed belonged to Mr. Groves. * * * I conclude, then, that Mr. McGeary has shown no such legal injury as entitles him to allege estoppel against the insurance company. Mrs. Groves does not. Will the law do it for her in this case ? If it does, the effect would be to enable Mr. McGeary to obtain indirectly that which he could not obtain at his own instance.

" There is no such thing known to the law in this state as ownership of real estate by a wife, where it has been paid for by her husband. How then can she be prejudiced ? Nothing is taken away from her, for she had nothing. It is true that equity will sustain a reasonable provision for a wife, but here it is an unreasonable provision ; in fact, a gift of all the husband had. She is, therefore, in no position to invoke the aid of equity, and as law will not help her, it follows that this claim, that of the second mortgage of the insurance company, must be paid as far as the fund will permit." * * *

The auditor reported a schedule of distribution, in accordance with his report, by which the balance of the fund was appropriated to the Weihr judgment, which was thus paid in full, and the insurance company's second mortgage, which was paid only in part.

McGeary filed exceptions, which were overruled by the court, and the report confirmed.

McGeary appealed to the Supreme Court, and assigned for error :—

[McGeary's Appeal.]

1. The claim of Frederick Weihr should not be preferred to McGeary's mortgage, because it is a judgment against John D. Groves alone, the said Weihr being estopped from denying Mrs. Groves's title, as it was vested in her by his own conveyance, and therefore he became a party to the fraud, if there was any, on Groves's creditors.

2. Sophia Groves is not a competent witness against her husband.

3. The evidence does not prove fraud.

4. The insurance company is estopped from denying title in Mrs. Groves, by its own act.

5. McGeary was misled, to his own hurt, by the action of the said insurance company. He therefore claims that both the claim of Weihr and of the Pittsburg Insurance Company should be postponed to his mortgage.

*W. K. Jennings,* for appellant.—Weihr intended to take the liability of the husband alone ; if there was fraud in putting husband's property in the wife's name, he was a party to it, and cannot take advantage of it : French *v.* Mehan, 6 P. F. Smith 286. The wife could not be a witness against her husband : Yeager *v.* Weaver, 14 P. F. Smith 425. She was testifying against him : Bergey's Appeal, 10 P. F. Smith 408 ; Peiffer *v.* Lytle, 8 Id. 386 ; Silvis *v.* Ely, 3 W. & S. 420.

*R. Robb,* for Weihr.

*W. S. Purviance* (with whom was *S. A. Purviance*), for the insurance company.—If there were grounds of estoppel, as between the company and Grove, there can be none as to McGeary, who is a stranger : Sunderlin *v.* Struthers, 11 Wright 411 ; Allen *v.* Allen, 9 Id. 468. A recital does not amount to an estoppel : Wells *v.* Stoyer, 3 Penn'a L. Jour. 203 ; Naglee *v.* Ingersoll, 7 Barr 185. No injury has been done to McGeary by the recital : Cuttle *v.* Brockway, 8 Casey 45 ; Brubaker *v.* Okeson, 12 Id. 519.

The opinion of the court was delivered, January 6th 1873, by
READ, C. J.—The auditor's report contains a very full statement of the facts of the case, and it is only necessary to advert to such as are material in deciding the questions arising upon them.

"Prior to October 1867, John D. Groves was a journeyman carpenter—at that time he began business on his own account without any capital. He had been but a short time married. His wife at the time of the marriage, brought with her from home a small sum of money—less than $500—which she permitted her husband to take and use. There does not appear to have been any agreement on his part or expectation on hers, that he should re-

22 P. F. SMITH—24

[McGeary's Appeal.]

fund the money to her.   With it he appears to have bought from
John H. Hespenheide, a lot of ground in Allegheny, paying there-
for $425, and taking title in his own name.   He sold this property
in the spring of 1868, to Mr. Huckenstein for $850, payable in
building materials.   Prior to the consummation of this sale, he
bought on April 11th 1868, from John Nicholson, a lot on Second
street or avenue, Pittsburg, for a consideration of $1120, of which,
however, no part of the consideration was paid at the time, and
took the title in his own name.   He then proceeded to erect a
building on this lot.   The material and work, other than carpen-
ter work, were obtained on credit.   The carpenter work was done
by himself and a partner that he had at the time, named William
Fritz; about $40 worth of laboring work, about the building, was
paid for in cash out of the firm funds of Groves & Fritz.   In May
1868, he sold this property at a valuation of $4920 to Thomas
Maple, who gave in payment a deed to John D. Groves for thirteen
lots in St. Clair borough, at a valuation of $2600, and paid the
remaining $2320, by assuming the purchase-money which had not
yet been paid to Nicholson, and the bills for materials furnished,
and work done in building the house.   On 18th May 1868, Groves
bought in his own name from L. S. Woodson a lot on Congress
street, Pittsburg, at a valuation of $950, of which $300 were paid
in cash, that amount being raised by a mortgage of the St. Clair
borough lots, deeded to him a few days before.

Being then the owner of thirteen lots, in St. Clair borough, and the
lot on Congress street, Groves, on August 22d 1868, made a deed
to Samuel Fritz, his brother-in-law, for a nominal consideration of
$3000—no money, however, being then or afterwards paid, the
object being to vest the title to them in Mrs. Groves, and in pur-
suance of that object, Samuel Fritz, on the same day, did convey
these properties to Mrs. Sophia Groves.

On September 11th 1868, nine of the thirteen lots were traded
by Groves to Frederick Weihr, for the property sold under the
writ of execution in this case ; the St. Clair lots being valued at
$2600, and the Weihr property at $3149, the balance of $549
being provided for by a judgment given by John D. Groves indi-
vidually, to Frederick Weihr, of which $424 has since been paid
by Groves in work and materials, the remaining $125 being the
claim made before the auditor.

Before the close of 1868, Groves was indebted on the St. Clair
lots $300, to Woodson $650, to Weihr $549, to the Pittsburg In-
surance Company $700.   Mr. Groves also bought from time to
time real estate, taking the title in the name of his wife, and pay-
ing small sums of money on account thereof, the purchases begin-
ning on September 15th 1868, and ending on 12th August 1870,
and amounting to $13,150.

It is perfectly clear from this state of facts, that the Weihr

property conveyed to Mrs. Groves, was not her property as against her husband's creditors, but the property of her husband John D. Groves. "Her case required her to show that after her marriage, she had received money or other property of her own by will, descent, conveyance or otherwise, and that she invested that in this lot. . She offers no evidence of the. kind that can apply to this purchase, and that is a sufficient answer to her claim :" Walker v. Reany, 12 Casey 417.

In the case before us Mrs. Groves makes no claim at all. John D. Groves and wife executed two mortgages to the Pittsburg Insurance Company of the Weihr property, one dated November 20th 1868, and recorded the next day for $700, upon which judgment was had at March Term 1871, and the property sold on a *lev. fa.* issued upon it, and the money brought into court for distribution. The second, dated July 29th 1869, and recorded the same day for $1000. The acknowledgment of this mortgage was defective on the part of Mrs. Groves.

There was also a judgment in favor of Frederick Weihr against Mr. Groves, entered on the judgment note to November Term 1869, on which there was a balance due of $125. There was also a mortgage by Groves and wife to the appellant H. S. McGeary, dated November 19th 1870, and recorded the same day for $700, with interest. This mortgage was taken with a full knowledge of the preceding encumbrances and the defective acknowledgment of the mortgage of 29th July 1869.

Upon this state of facts the claim is made by the appellant to take precedence of the second mortgage, and of Weihr's judgment.

The land in contemplation of law was in Groves, not only by the admissions of Mrs. Groves, but also by the law itself as settled by repeated decisions of this court, independently entirely of her testimony. She also was a competent witness, as she was not testifying against her husband, but only to the truth as regarded herself. Nor were the Pittsburg Insurance Company, nor Mr. Weihr, by any act of theirs, estopped from showing that the title was really in the husband, though nominally in the wife.

Mr. McGeary was not misled by the action of the insurance company or of Mr. Weihr, for with a full knowledge of all the facts, he must have known the title was in the husband, not in the wife.

The decree of the court confirming the report of the auditor is affirmed, and the appeal dismissed at the costs of the appellant.