Kerr *v*. Clements (et al., Appellants).

Argued November 12, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*B. D. Oliensis,* for appellants.

*James Hay Simms,* for appellee.

OPINION BY HIRT, J., April 14, 1942:

Plaintiff, by assignment, became the owner of a bond and the accompanying mortgage given by Charles K. Clements on land on Newhall Street in Philadelphia. She entered judgment on the bond and issued execution levying, not upon the land described in the mortgage, but upon other land on Wagner Avenue in Philadelphia which Clements once owned but which he had conveyed, more than a year before plaintiff's judgment, to defendants Orville P. Strock and Minnie E. Strock, his wife. On April 1, 1940, the land conveyed to them was sold by the sheriff to the plaintiff on this execution. Thereupon plaintiff brought this action in ejectment. Clements, the former owner, filed a disclaimer and the action proceeded against Strock and wife on the issue

whether the conveyance to them was fraudulent as to Clements' creditors. The jury found for the plaintiff and judgment was entered on the verdict. Hence, this appeal.

Appellants contend preliminarily that the question cannot be determined in an action of ejectment but that the only remedy of a sheriff's vendee is by citation under the Act of April 20, 1905, P. L. 239, 12 PS 2571. The question was raised by demurrer to plaintiff's declaration which was overruled. We find no merit in this contention.

The remedy provided by the Act of 1905 is not exclusive. In *Sec. N. Bk. of Uniontown v. Hustead,* 334 Pa. 421, 6 A. 2d 63, it is said: "The object of the Act of 1905, P. L. 239, is to enable the purchaser at a judicial or sheriff's sale to secure possession of the property sold, immediately upon delivery of the deed." The remedy of that act was held to be concurrent with that provided by the Act of March 31, 1905, P. L. 87, 68 PS 366. Since the Uniform Fraudulent Conveyance Act of 1921, P. L. 1045, as before, the courts have repeatedly recognized that a creditor has a choice of remedies where a conveyance is fraudulent as to him. *Simon v. Sorrentino,* 145 Pa. Superior Ct. 364, 20 A. 2d 805; *Penna. Trust Co. v. Schenecker,* 289 Pa. 277, 137 A. 272; *Shaw v. Newingham,* 287 Pa. 304, 135 A. 260. In *Conemaugh I. W. Co. v. Delano C. Co.,* 298 Pa. 182, 148 A. 94, it is said: "The established way to test the question of whether real property has been conveyed in fraud of creditors is for one claiming to be a creditor to obtain a judgment and issue execution against the premises in question as the property of his debtor, this to be followed by an ejectment at the suit of the purchaser at sheriff's sale." And further, in referring to the Act of 1921, supra: "That statute gives an additional optional remedy, by bill, to set aside the conveyance to the extent necessary to satisfy the creditor's claim *(Sauber v. Nouskajian,* 286 Pa. 449, 133 A. 642), but it

does not deprive a creditor of the right, as formerly, to work out his remedy at law." These acts of assembly supply additional remedies and a choice of procedure to enable a purchaser to gain possession of the land more expeditiously but the remedy of ejectment is not supplanted by any of them. The plaintiff in *Gould v. Randal*, 232 Pa. 612, 81 A. 809, brought ejectment in which he asserted title through a sheriff's sale on the judgment. The defendant there contended, (unsuccessfully, as in the instant case) that the court had no jurisdiction in ejectment because of the remedy provided by the Act of 1905, P. L. 239; the verdict was for the plaintiff. Defendant then brought a bill in equity praying that the judgment entered on the bond be opened. In dismissing the bill the Supreme Court said: "The judgment in that [ejectment] case in favor of the plaintiff, affirmed by this court, judicially determined that these defenses [including the contention that the court had no jurisdiction because of the remedy provided by the Act of 1905] were insufficient to defeat Randal's title [acquired on sheriff's sale] to the premises in controversy."

The issue on the trial was whether the conveyance was made by Clements, without a fair consideration, while insolvent. The Strocks were parties to the record and as such were properly called by plaintiff to testify as under cross-examination. Act of May 23, 1887, P. L. 158, as amended March 30, 1911, P. L. 35, 28 PS 381. There is no immunity under that act in favor of husband and wife. They contend, however, that when called, each was compelled to testify against the other in violation of the Act of May 10, 1927, P. L. 861, §1, 28 PS 317, and that the refusal of the trial judge to strike out their testimony was error. On that ground they ask for a new trial.

Plaintiff's proofs do not rest wholly upon the testimony of the Strocks. In the light of the verdict the following may be regarded as facts established by other

evidence in the case: When Clements gave the bond and the mortgage in 1930 on the Newhall Street property, there were buildings of a sort on the premises occupied by his tenants, though the property was unproductive of income. In 1937 the structures were condemned and were demolished by the city. The lots made vacant by the removal of the buildings were of doubtful value; there were taxes of about $300 in arrears and these lots were inadequate as security for the debt. Clements, at the time of conveyance to the Strocks, was employed by the W. P. A. and was insolvent. His property and resources were wholly insufficient to pay his debts, including the obligation of his bond to plaintiff. The property on Wagner Avenue, the subject of this appeal, was then occupied by a Mrs. Madden. She as Clements' tenant had conducted a rooming house there for a number of years, and Clements had lodgings on the premises. Defendant, Minnie E. Strock and Mrs. Madden are sisters. There was a mortgage on the premises of about $2,900 given by Clements to the Home Owners Loan Corporation. There were unpaid taxes. Without computing the actual amount of the encumbrances against the land, and without determining a definite sale price, Clements testified that he agreed with the Strocks to convey the premises to them, subject to the mortgage and unpaid taxes, for $500. He and the lawyer, who was present at the delivery of the deed, say that this amount was paid by the Strocks in cash, though the jury did not accept this testimony. The alleged sales agreement was informal and was not reduced to writing. After the transfer, Clements and Mrs. Madden were married and they continued to occupy the premises, but no written lease was required of them by the Strocks. Clements' acts in relation to the property were exactly the same after his conveyance as before. He continued to make the monthly payments on the mortgage directly to the mortgagee; neither he nor his wife paid anything to the Strocks for

their use of the property though it is contended that the payments on the mortgage made by Clements were in lieu of rent under an oral agreement. The Strocks did nothing after the conveyance which can be construed as an assertion of ownership except to record their deed.

There is nothing in the testimony of either Strock or his wife which charges the lower court with error in permitting them to testify. They did not testify against each other and the Act of 1927, therefore, was not violated. Their testimony is almost identical in effect; each supported and therefore favored the other in a vain effort to sustain their title.

As to the wife, however, there was additional testimony. A witness for plaintiff testified that he approached her as a prospective purchaser of the property. He related this conversation with her: "I asked her if the property was for sale. Well, she said it could be bought if Mr. Clements could get his price for it. I says, 'Don't you own the property?' She says, 'Yes, I own the property, I hold the deed to the property, but Mr. Clements is practically the owner of it in a way.' I says, 'What way is that?' She says, 'There is some trouble about this property.' I said, 'What is the trouble?' She would not tell me the trouble, but she said, 'I would have to talk to Mr. Clements before I could tell you anything of what price the property would be sold for.' She says, 'You call back.' " Defendants strongly urge that this testimony was inadmissible.

What is prohibited by the act is testimony in any form by the wife or husband *against* the other. Extrajudicial admissions are a sort of testimony; hence the prohibition of the act applies to them with the same force as though made by a spouse from the stand. Wigmore, Ev. 3d Ed., §§1048, 2232. We think the testimony of these prior statements of the wife was admissible not only to contradict testimony given by her

when called on cross-examination, but as substantive proof of a conveyance by Clements in fraud of his creditors; it was so received over objection. The prohibition against the competency of husband and wife to testify against each other operates only within proper bounds. It was not intended in the act to supply the means of protecting another in a fraudulent transaction nor to render husband and wife secure in the enjoyment of the fruits of fraud.

In this case the estate under the deed was in Strock and his wife by entireties. If the conveyance was valid they were not seized of separate or severable interests in the land, but each, by legal fiction, owned the whole. (For a recent discussion of the incidents of an estate by entireties, see *Madden et al. v. Gosztonyi S. & T. Co.,* 331 Pa. 476, 200 A. 624). This testimony of the admissions of the wife, therefore, went to her ownership of the whole and not against her husband as to a separate estate in him. Admissions of the wife against her interest are admissible. *Hollinshead v. Allen,* 17 Pa. 275. If accepted by the jury this testimony in itself was sufficient to strike down her title and it is no objection to its admission, where the door is opened on a charge of fraud, that her husband's interest in the land of necessity fell with it. In contemplation of law they were one person and that was an inevitable result.

A somewhat similar question was before the court in *Bank of Pittsburgh v. Purcell et ux.,* 286 Pa. 114, 133 A. 31, an action in equity to set aside a conveyance from Purcell to himself and wife. Mr. Justice WALLING said: "To establish Purcell's insolvency at the time of the alleged fraudulent transfer, plaintiff was permitted to prove his declarations. There was no error in this for the declarant was a party to the suit, in possession of and claiming a joint ownership [by entireties] in the land at issue and the declarations were against his interest. See *Frazier v. Foreman,* 269 Pa. 13; *Miller et al. v. Baker,* 160 Pa. 172. It is not the

case of the competency of a husband's declarations to impeach the wife's title." In the light of the Purcell case, *Peck v. Ward,* 18 Pa. 506, cannot be regarded as controlling. The other cases relied upon by appellants are distinguishable on their facts. Prior representations of the husband in securing property as against the claim of the wife were held to be admissible in *Schoeneman v. Weill et al.,* 3 Pa. Superior Ct. 119, on the ground that to exclude them "would open the door to successful fraud, and place in the hands of the fraudulently disposed the power of securing property through conspiracy with his wife, and at the same time prevent any investigation of the fraud. This is not the law and is contrary to its policy." Cf. *McGeary's Appeal,* 72 Pa. 365.

Judgment affirmed.