512 A.2d 1261

**COMMONWEALTH of Pennsylvania**

v.

**James M. WATSON, Appellant.**

Superior Court of Pennsylvania.

Argued June 3, 1986.

Filed July 18, 1986.

162

Michael J. Healey, Pittsburgh, for appellant.

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CIRILLO, President Judge, and POPOVICH and HESTER, JJ.

HESTER, Judge:

This is an appeal from judgment of sentence entered upon appellant's conviction of third degree murder by a jury. Our review of the numerous issues raised by appellant discloses no error, so we affirm.

This case involves a conspiracy leading to the contract killing of Norman McGregor on December 14, 1978. Eight men were involved in the conspiracy, some of whom were intermediaries who hired Robert Bricker to perform the murder. Bricker enlisted the aid of appellant and another man, Charles Rossi. Three conspirators, including Rossi, were granted immunity and testified for the Commonwealth at appellant's trial, which was severed from those of the other participants.

Bricker was given a physical description of the victim which he shared with Rossi and appellant, since none of them had ever seen the victim, together with a list of locations frequented by the victim. One of these locations was the Down Under Lounge in Homestead, Pa. On Sep-

tember 3, 1978, appellant shot and injured James Smith at the Down Under Lounge, mistakenly believing him to be McGregor. Two months later, after many nights of lying in wait, appellant shot and killed McGregor in his front yard when he returned home at 3:00 A.M. Later in the day, Bricker told Rossi that appellant had killed McGregor. Following the killing, the final installment of the $10,000 contract price was paid to the murderers.

Appellant has raised seven issues. He claims the trial court erred in: (1) allowing hearsay statements by codefendant Bricker to witness Rossi into evidence, for (a) such statements were not made during the course of or in furtherance of the conspiracy, and (b) such statements were inadmissible because they violated appellant's rights under the confrontation clause; (2) denying appellant the opportunity to place codefendant Bricker on the witness stand in the presence of the jury; (3) denying appellant's request that codefendant Bricker be given use immunity for the purpose of securing his testimony at trial; (4) allowing evidence of appellant's incarceration on other charges and evidence of his shooting of Smith at the Down Under Lounge; (5) allowing the Commonwealth to question prospective jurors regarding their attitude towards the death penalty and in allowing the Commonwealth to challenge for cause any person irrevocably committed to vote against the death penalty; (6) denying appellant's demurrer to the charge of criminal homicide, for there was insufficient evidence to support a verdict of murder in the third degree; and (7) refusing appellant's motion for disclosure of exculpatory information and refusing to review the homicide investigative file in the possession of the Commonwealth in camera to determine if, in fact, it contained exculpatory material.

The first three issues center on trial court rulings pertaining to co-conspirator Bricker. Appellant first objects to admission of Rossi's testimony that "sometime in the middle of December Mr. Bricker give me a call and he said, and I quote, that Sonny Watson had killed Mr. McGregor." N.T.,

10/5/82, at 425. Appellant denies that the co-conspirator exception to the hearsay rule justifies admission of the statement; he argues that the statement was made following the completion of the conspiracy and was not made in furtherance of the conspiracy. He also argues that, even if admissible as a hearsay exception, the statement lacked sufficient indicia of reliability to satisfy the confrontation clause, primarily because Bricker told other co-conspirators that he shot McGregor.

The Commonwealth argues that Bricker's statement that appellant had killed McGregor was made both during and in furtherance of the conspiracy, inasmuch as it was made prior to final payment for the crime and was related to securing payment. Furthermore, the statement was sufficiently reliable to satisfy the constitutional requirements of the confrontation clause.

 We hold that the trial court was correct in admitting Rossi's hearsay testimony. In discussing the admissibility of hearsay declarations made during a conspiracy in furtherance of the common design, the supreme court stated the general rule that a conspiracy ends when its principal objective is accomplished. *Commonwealth v. Evans*, 489 Pa. 85, 413 A.2d 1025 (1980). The court, however, continued:

> But the fact that the "central objective" of the conspiracy has been nominally attained does not preclude the continuance of the conspiracy. Where there is evidence that the conspirators originally agreed to take certain steps after the principal objective of the conspiracy was reached, or evidence from which such an agreement may reasonably be inferred, the conspiracy may be found to continue.... The crucial factor is the necessity for some showing that the later activities were part of the original plan.

*Evans, supra,* 489 Pa. at 93, 413 A.2d at 1029 (citations omitted). It is clear that payment for the murder was part of the original plan, and the conspiracy did not end until the murder was reported and payment received. We also hold that sufficient indicia of reliability attended the statement

to satisfy the confrontation clause as the requirement was recently stated by the Supreme Court. "[T]he Confrontation Clause normally requires a showing that [a hearsay declarant] is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980). The co-conspirator exception is a well-established exception to the hearsay rule in Pennsylvania. *Commonwealth v. Coccioletti*, 493 Pa. 103, 111, 425 A.2d 387, 391 (1981).

The second and third issues relate to the availability of Bricker, the declarant of the hearsay statement. Appellant argues that the trial court should have permitted appellant to place Bricker on the witness stand in the presence of the jury so the jury could have heard Bricker invoke his privilege against self-incrimination. As appellant's brief notes, however, such a procedure is forbidden by *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971), and this court has no authority to ignore the holding in *Greene*. Appellant's related argument is that the court erred in refusing to grant use immunity to Bricker in order to secure his testimony. The power to grant immunity upon request of the Commonwealth is derived from 42 Pa.C.S. § 5947(b). Appellant's precise argument was rejected in *Commonwealth v. Johnson*, 507 Pa. 27, 29, 487 A.2d 1320, 1321 (1985), wherein the court stated that the trial court "lacked the power to grant use immunity to the defense witness without the consent of the prosecutor." Again, the supreme court's holding is binding on this court, as it was on the trial court. Thus, the trial court did not err in refusing to grant immunity to Bricker.

The fourth issue is appellant's claim that the trial court erred by allowing evidence of other criminal activity by appellant including evidence of incarceration on other charges and evidence of a shooting at the Down Under Lounge. The first objection is to testimony by Commonwealth witness Rossi that after the murder, he saw appel-

lant at the county jail when Rossi was arrested in 1981. N.T., 10/5/82, at 433. No objection was made at the time, but appellant's counsel moved for a mistrial at the conclusion of Rossi's direct testimony. He argued that the jury would learn that Rossi was arrested for McGregor's murder before appellant had been arrested, and that Rossi did not implicate appellant in the murder until after his arrest; the jury would therefore infer that appellant was in jail on unrelated charges when Rossi was arrested. *Id.* at 436–38. The trial judge denied the mistrial but offered a cautionary instruction, which was declined. *Id.* Only upon cross-examination by appellant's counsel did the jury learn that Rossi's arrest in 1981 preceded appellant's arrest for the McGregor murder. *Id.* at 444.

Clear references to prior unrelated criminal activity warrant a mistrial. However:

the Pennsylvania Supreme Court stated in *Commonwealth v. Nichols*, 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979) that "[not] all references which may indicate prior criminal activity warrant reversal." Mere "passing references" to prior criminal activity do not warrant reversal unless the record illustrates that prejudice resulted from the reference. *Ibid.* As we stated in *Commonwealth v. Colon*, 264 Pa.Super. 314, 321–322, 399 A.2d 1068, 1071 (1979), there is "no per se rule requiring a new trial from every reference [to prior criminal conduct]. The decision whether to declare a mistrial when faced with these situations is addressed to the sound discretion of the trial judge."

*Commonwealth v. Bowermaster,* 297 Pa.Super. 444, 451, 444 A.2d 115, 118 (1982). In this case the testimony was that Rossi saw appellant "at the County Jail when they arrested me." N.T., 10/5/82, at 433. It was not clear that appellant was incarcerated, or if he were, that it was on unrelated charges. It was not until the following week of trial, during Rossi's cross-examination by appellant's counsel, that Rossi testified that he did not implicate appellant in the conspiracy until after his own arrest for the murder. *Id.* at 444. The trial court held that the implied reference to

unrelated criminal activity was too tenuous to warrant a mistrial. Slip op., 12/19/86, at 15–16. We agree, particularly in view of the facts that no timely objection was made nor was a cautionary instruction requested, which might "have only exaggerated a very minor problem." *Commonwealth v. Bowermaster, supra,* 297 Pa.Super. at 452, 444 A.2d at 119; *Commonwealth v. Jackson,* 248 Pa.Super. 420, 425, 375 A.2d 168, 170 (1977).

■ Appellant also objects to the testimony regarding his mistaken shooting of Smith at the Down Under Lounge two months before the killing of McGregor. A well-established exception to the rule against prior criminal activity permits such evidence to prove motive, intent, a mode of operation or a common scheme. *Commonwealth v. Peterson,* 453 Pa. 187, 197–98, 307 A.2d 264, 269 (1973); *Commonwealth v. Shirey,* 333 Pa.Super. 85, 481 A.2d 1314 (1984). Evidence of the prior shooting was clearly relevant to establish specific intent to kill, the mode of operation and that it was part of the conspirators' common scheme. There was no error in the admission of this evidence.

■ Appellant's fifth argument is that the trial court erred in permitting potential jurors to be stricken for cause if they were irrevocably committed to vote against the death penalty. The argument is definitively foreclosed by the Supreme Court's holding in *Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

■ Appellant's sixth argument is that the trial court erred in denying his demurrer to the charge of criminal homicide and that there was insufficient evidence to support a verdict of third degree murder. When a defendant does not rest following denial of a demurrer, but instead presents a defense, the correctness of the ruling on the demurrer is not preserved for appellate review; the proper procedure is to challenge the sufficiency of the evidence. *Commonwealth v. Beckham,* 349 Pa.Super. 430, 435, 503 A.2d 443, 445 (1986). Appellant's boilerplate attack on the sufficiency of the evidence would be proscribed under *Commonwealth v. Holmes,* 315 Pa.Super. 256, 259–60, 461 A.2d 1268, 1274 (1983), but appellant's post-verdict motions were

filed prior to the decision in *Holmes* and therefore suffice to preserve this issue for review.

In evaluating the sufficiency of the evidence to support a conviction, "we view the evidence in the light most favorable to the Commonwealth and, drawing all reasonable inferences therefrom favorable to the Commonwealth, determine if there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Stoyko*, 504 Pa. 455, 462, 475 A.2d 714, 718 (1984). Appellant challenges the inconsistencies in the Commonwealth's evidence—notably, Bricker's statements that he shot McGregor vis-a-vis his statement to Rossi that appellant shot McGregor. Appellant also alleges the third degree murder verdict is a compromise verdict due to the absence of facts which would have specifically allowed for a reduction of the grading of the homicide to third degree murder.

The jury, passing on the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Harper*, 485 Pa. 572, 576–77, 403 A.2d 536, 539 (1979). Bricker's claim to have shot McGregor was explained as an attempt to maintain his personal reputation as a contract killer without giving credit to someone else he hired to commit the killing. N.T., 10/5/82, at 433, 814. This explanation reasonably accounts for Bricker's inconsistent statements and certainly justifies the jury's possible conclusion that appellant shot McGregor. Under the standards set forth in *Stoyko, supra,* and *Harper, supra,* the Commonwealth presented sufficient evidence to support a verdict of first degree murder or third degree murder. Third degree murder is a lesser included offense of first degree murder, *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977), and evidence sufficient to support a first degree murder conviction is, *a fortiori*, sufficient to support a verdict of third degree murder.

Appellant's seventh and final argument is that the court committed a *Brady* violation by refusing his motion for disclosure of exculpatory information and by failing to

conduct an in camera inspection of the Commonwealth's investigative file. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "An in camera inspection of the Commonwealth's file is not required unless there is reason to believe that evidence favorable to the defense will be revealed." *Commonwealth v. Colson,* 507 Pa. 440, 462, 490 A.2d 811, 822 (1985). Furthermore, "[e]xculpatory evidence is that which extrinsically tends to establish defendant's innocence of the crimes charged, as differentiated from that which, although favorable, is merely collateral or impeaching." *Commonwealth v. Hicks,* 270 Pa.Super. 546, 550, 411 A.2d 1220, 1222 (1979). Appellant points to no evidence which approaches this definition of exculpatory material and advances no reason to justify an in camera inspection of the Commonwealth file. Accordingly, we hold that no *Brady* violation occurred.

Having rejected all of appellant's arguments, we affirm his judgment of sentence.