KELLY, Judge:
 

 Defendant, Donald Blough, appeals
 
 nunc pro
 
 tunc
 
 [1]
 
 from the judgment of sentence imposed upon convictions of arson and related offenses. On appeal, appellant raises two issues: (1) whether the evidence presented was insufficient to sustain the verdict; and (2) whether trial counsel was ineffective in failing to object, on the grounds of spousal immunity, to the testimony of a Commonwealth witness regarding a statement made by appellant’s wife.
 
 [2]
 
 We find that the issues raised on appeal are without merit. We therefore affirm.
 

 
 *232
 
 Following a jury trial, appellant was found guilty of arson by recklessly placing firefighters in danger of death or bodily injury,
 
 [3]
 
 arson committed with the purpose of destroying or damaging an inhabited building or occupied structure of another,
 
 [4]
 
 arson with intent of destroying or damaging property in order to collect insurance proceeds,
 
 [5]
 
 arson by intentionally starting a fire and thereby recklessly placing an inhabited building or occupied structure of another in danger of damage or destruction,
 
 [6]
 
 risking a catastrophe,
 
 [7]
 
 and criminal mischief.
 
 [8]
 
 Post-trial motions were denied, and the court sentenced appellant to three (3) to six (6) years for arson by recklessly placing firefighters in danger of death or potential injury, and six (6) to twelve (12) months for criminal mischief, to be served concurrently. Sentence was not imposed upon the remaining offenses.
 

 I.
 

 Appellant first contends that the Commonwealth presented insufficient evidence to support the convictions. In evaluating this contention, “we view the evidence in the light most favorable to the Commonwealth as verdict winner and, drawing all reasonable inferences therefrom favorable to the Commonwealth, determine if there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt.”
 
 Commonwealth v. Griffin,
 
 511 Pa. 553, 559, 515 A.2d 865, 867 (1986);
 
 Commonwealth v. Stoyko,
 
 504 Pa. 455, 462, 475 A.2d 714, 718 (1984). Viewed in that light, the record discloses the following.
 

 Prior to January 1985, the appellant and his wife resided in a Sharon, Pennsylvania home which was owned by appellant’s wife and her sister. The home was insured against
 
 *233
 
 fire loss. In January 1985, the gas was disconnected, causing the water pipes to freeze. Appellant and his wife moved into a friend’s home temporarily. Appellant hired a neighbor to thaw the pipes and asked him to watch over the home while it was vacant. While working on the home, the neighbor discovered that one of the pipes had broken, causing water damage to the ceiling. The neighbor testified that on January 18, upon viewing the damage and learning that the loss would not be covered by insurance, appellant’s wife stated that she would not stay in the house any longer.
 

 On the evening of January 18, between 6:30 and 7:00 p.m., the neighbor received a phone call from appellant, who told him that he need not keep an eye on the house any longer. Commonwealth witness Linda Crocker, who lived in a home located across an alley from appellant’s residence, testified that at about 7:00 p.m. she heard the appellant’s side door slam. Looking out the window, she saw appellant close the screen door and walk rapidly to his car, which was parked in the street. Appellant got into his car and drove away at a high rate of speed. Ten to fifteen minutes later, Linda Crocker learned from a neighbor that the appellant’s house was on fire. Upon arriving, firefighters found a very intense fire in the kitchen; air packs were required because of the dense smoke. Using water hoses, the firefighters put the fire out within a short time after arriving.
 

 As appellant’s next-door neighbor Linda Crocker stood viewing the scene, the appellant arrived. She said to appellant, “You were just here.” He replied, “Yes, but everything was all right when I left.” The Commonwealth produced Detective Frank White; he testified that, during an interview on January 19, 1985, appellant stated that on the night of the fire he remained at a bar from 5:35 p.m. until 7:35 p.m., when he received a call from his wife informing him of the fire.
 
 [9]
 
 The Commonwealth also called Thomas Myers, a friend of appellant’s, who recalled that he accompanied appellant to two bars, between 4:30 p.m. and
 
 *234
 
 approximately 6:00 p.m. Appellant left the second bar at about 6:00 p.m. and returned about forty-five minutes later. He then received a call informing him of the fire.
 

 On January 19, the day after the fire, Chief Paul McSherry of the Sharon Fire Department and Fire Marshall Goeltz of the Heritage Fire Department examined the scene to determine the cause of the fire. Chief McSherry testified that the kitchen was completely gutted, with a hole burned through the kitchen floor between the stove and kitchen sink. The chief testified that fire normally travels upward, toward the ceiling, leaving the floor intact. In this case however, the floor and baseboard were charred; after cleaning the debris from the floor, the chief was able to see a circular pattern, consistent with a flammable liquid being poured and burned. The chief checked all the electrical outlets in the kitchen and found them to be intact. A partially filled container of flammable liquid was discovered on the back porch. In the chiefs opinion, “the fire could not have been accidental. It had to be ... ignited by some unknown person.” (N.T. 6/13/85 at 135).
 

 Appellant argues that the evidence against him is only circumstantial in nature. He points out that his companion at the bar, Thomas Myers, testified that appellant left the bar from 6:00 to 6:45 p.m., while Linda Crocker stated that she saw appellant leaving the home at about 7:00 p.m. According to appellant, this inconsistency results in a verdict based upon conjecture. Appellant argues further:
 

 ... [TJhere is no evidence to show when the fire started. We only know when it was discovered. The fire could just as easily started [sic] after Appellant left the house. Without a showing of when the fire started, the fact Appellant was seen leaving the house at 7:00 p.m. only creates a suspicion he started the fire. It does not prove beyond a reasonable doubt he started it.
 

 (Appellant’s brief at 10).
 

 While a criminal conviction may not be based upon mere surmise or conjecture, the Commonwealth’s burden to present sufficient evidence to prove every element of the
 
 *235
 
 crime beyond a reasonable doubt may be sustained based on wholly circumstantial evidence.
 
 Commonwealth v. Potter,
 
 350 Pa.Super. 61, 504 A.2d 243 (1986);
 
 Commonwealth v. Shirey,
 
 343 Pa.Super. 189, 494 A.2d 420 (1985). To establish complicity, mere presence at the scene of a crime, like flight from the scene, without more, is not sufficient.
 
 Commonwealth v. Rosetti,
 
 322 Pa.Super. 536, 541, 469 A.2d 1121, 1123 (1983). However, those factors combined, along with other direct or circumstantial evidence may provide a sufficient basis for a conviction.
 
 See Commonwealth v. Rosetti, supra; Commonwealth v. Wilson,
 
 294 Pa.Super. 101, 439 A.2d 770 (1982).
 

 In the instant case, the Commonwealth established that appellant had a motive for setting fire to the house: money was needed to make major repairs within the home. Further, shortly before the fire was discovered, appellant telephoned a friend whom he had asked to watch the home, and told him he need not keep an eye on it any longer. Appellant was seen leaving the house and speeding away minutes before the fire was discovered.
 
 [10]
 
 Appellant reappeared at the scene, admitting that he had been present a short time before; yet in a statement made to an investigating officer, he denied that he had been present at the house before the fire occurred. A jury could properly infer a consciousness of guilt from this false statement to authorities.
 
 Commonwealth v. Hart,
 
 403 Pa. 652, 170 A.2d 850 (1961),
 
 cert, denied
 
 368 U.S. 881, 82 S.Ct. 130, 7 L.Ed.2d 81 (1961);
 
 Commonwealth v. Snyder,
 
 335 Pa.Super. 19, 483 A.2d 933 (1984). Considering all the testimony in the light most favorable to the Commonwealth, it is clear that the jury’s verdict was based upon sufficient evidence. The Commonwealth’s evidence, though circumstantial, was sufficient to prove each of the elements beyond a reasonable doubt.
 

 
 *236
 
 II.
 

 Appellant next contends that trial counsel was ineffective for failing to object, on the basis of spousal immunity, to the testimony of a Commonwealth witness regarding a statement made by appellant’s wife. As with any ineffectiveness claim, we begin with the observation that counsel is presumed to be effective, and the burden of proving otherwise is on the defendant.
 
 Commonwealth v. Diggs,
 
 351 Pa.Super. 444, 506 A.2d 431 (1986). To make out a claim of ineffectiveness, a defendant must first demonstrate that the underlying issue is of arguable merit. If so, then inquiry must be made whether the course chosen by counsel was reasonably designed to protect his client’s best interests and whether counsel’s dereliction so prejudiced the client as to deny him the right to a fair trial.
 
 Commonwealth v. Westcott,
 
 362 Pa.Super. 176, 203, 523 A.2d 1140, 1153 (1987);
 
 Commonwealth v. Diggs, supra.
 
 Counsel is not ineffective for failing to assert a baseless claim.
 
 Commonwealth v. Glass,
 
 514 Pa. 287, 523 A.2d 741 (1987);
 
 Commonwealth v. Nelson,
 
 514 Pa. 262, 523 A.2d 728 (1987). With this standard in mind, we proceed to examine appellant’s specific claim of ineffectiveness.
 

 A.
 

 The Commonwealth called appellant’s neighbor, William McLaughlin, to testify regarding appellant’s reaction to the water damage caused by the ruptured pipes and regarding the events immediately preceding the fire. Mr. McLaughlin testified that on the day of the fire, while working on the water lines in the home, he suggested to appellant that the water damage might be covered by homeowner’s insurance. Mr. McLaughlin testified that the following exchange then occurred:
 

 A. ... So I am back downstairs; and then Mr. Blough and Candie was — they were — they started arguing. They were arguing about whether or not they were going to be there or not.
 

 
 *237
 
 Q. All right; now, Candie is Mrs. Blough; is that correct?
 

 A. Yes, sir.
 

 Q. All right; now did Mr. Blough in the presence of Mrs. Blough say anything to you about the results of the call to the insurance company?
 

 A. Yes, sir; I came back, and I asked Don, I said, ‘Is the insurance company going to cover it?’ and he says, ‘No,’ he said, ‘they’re not going to cover it.’ I says, ‘Well, Don,’ I says, T know you don’t have the money to fix it, so,’ I says, ‘what I’ll do,’ I says, ‘what we could do is clean it up and then put a drop ceiling in there.’
 

 Q. How did Mrs. Blough react to this?
 

 A. She was kind of upset. She was — she says, ‘I’m not staying here like this.’ She says, ‘Look at this house.’ And it was a mess. It was — the water seeped all through the night, and the plaster, you know—
 

 Q. What was her state of mind? Describe her—
 

 A. She was upset at the insurance company not covering the damages and upset at the damage done to the house.
 

 (N.T. 6/13/85 at 105-6). The defense attorney objected to this testimony, arguing that the alleged statements made by appellant’s wife constituted hearsay; this objection was overruled,
 
 [11]
 
 and the testimony was allowed.
 

 B.
 

 On appeal, appellant claims that defense counsel should have objected to the testimony on the basis of spousal immunity. The applicable statute, 42 Pa.C.S.A. § 5913, provides that, with certain exceptions not applicable in the instant case, “in a criminal proceeding a husband and wife
 
 *238
 
 shall not be competent or permitted to testify against each other.”
 
 [12]
 
 Appellant recognizes that his wife did not testify directly against him; he argues, however, that “[e]xtra-judicial admissions ... are a form of testimony,” and that “the [spousal immunity] Act should apply to them with the same force as though made by a spouse from the stand.” (Appellant’s Brief at 14).
 

 Although the statute is often referred to as a spousal or marital immunity statute, it is actually more accurately described as an incompetency statute; adverse spousal testimony in a criminal case is prohibited, regardless of the spouses’ desires. The purpose behind such statutes is to preserve and protect the marital relationship.
 
 See
 
 Cornelius,
 
 Spousal Testimony in Pennsylvania,
 
 86 Dick.L.Rev. 491, 493-5 (1982); 8 Wigmore,
 
 Evidence
 
 § 2227 (McNaughton rev. 1961).
 

 As was previously stated, the statute provides that one spouse shall not be permitted to “testify” against the other. “Testify” is defined in Black’s Law Dictionary as “[t]o bear witness; to give evidence as a witness; to make a solemn declaration under oath or affirmation, in a judicial inquiry, for the purpose of establishing or proving some fact.”
 
 Black’s
 
 5th ed. at 1323 (1979). According to the rules of statutory construction, “[w]ords and phrases shall be construed ... according to their common and approved usage ...”. 1 Pa.C.S.A. § 1903(a). Applying the commonly used definition, to “testify” would not include the spouse’s extrajudicial statements, and the statute would not bar a third party from repeating those statements in a judicial proceeding.
 

 Although a very limited number of cases address the question here presented, some early authorities do support appellant’s argument that the statute (and its predecessor)
 
 *239
 
 bars such testimony, despite the clearly restrictive language of the statute. The rationale behind these cases is that, if the disclosure by defendant’s spouse of information adverse to defendant is intentional and the information is produced in court through the third person’s testimony, admission of the testimony may result in an evasion of the statute by accomplishing indirectly what cannot be accomplished directly through the spouse.
 
 See
 
 C.J.S. Witnesses § 86 (Indirect Testimony).
 

 In
 
 Commonwealth v. Fisher,
 
 221 Pa. 538, 70 A. 865 (1908), the defendant, while incarcerated and awaiting trial, sent two incriminating letters to his wife. The letters were obtained by the district attorney and admitted into evidence, over defense counsel’s objection. Defendant was found guilty of first degree murder. On appeal to the Supreme Court, defendant argued that the admission of the letters was in effect the giving of testimony by the wife against the husband, forbidden by statute.
 
 [13]
 
 The Court agreed:
 

 It is true the evidence does not show how the district attorney got possession of the letters, but the wife having received them, the reasonable presumption is that she gave them to the prosecuting officer____ For the purposes of the present case it is not necessary to consider or determine whether the letters were such confidential and privileged communications as not to be admissible in evidence at all under any circumstances, but we do hold that they could not be produced by the wife and offered in evidence as coming from her because this was in effect permitting the wife to testify against her husband and as to confidential communications made by one to the other, which cannot be done under our statute.
 

 
 *240
 
 221 Pa. at 544, 70 A. 865. The judgment was reversed and a new trial granted. In the 1942 case of
 
 Kerr v. Clements,
 
 148 Pa.Super. 378, 25 A.2d 737 (1942), this Court stated:
 

 What is prohibited by the act is testimony in any form by the wife or husband
 
 against
 
 the other. Extra-judicial admissions are a sort of testimony; hence the prohibition of the act applies to them with the same force as though made by a spouse from the stand.
 

 148 Pa.Super. at 382, 25 A.2d 737 (emphasis in original).
 

 In his treatise on evidence, Wigmore opines regarding the spouse’s extra-judicial statements:
 

 It can be argued that that which is privileged is the testimonial utterance in any form, by the wife or husband, offered against the other. Hearsay statements— oral or documentary — are testimonial utterances. Hence, it would follow that they are equally privileged with testimony on the stand.
 

 8 Wigmore,
 
 Evidence
 
 § 2232 (McNaughton rev. 1961).
 
 See also
 
 P.L.E. Witnesses § 41 note 6.
 

 Contrary to the broad statements of some of these authorities, the modern trend is to determine on a case-by-case basis whether the privilege applies to extra-judicial statements; the question becomes whether admission of the statement will offend the rationale underlying the privilege. In
 
 Kine v. Forman,
 
 205 Pa.Super. 305, 209 A.2d 1 (1965), this Court stated:
 

 We have held that this Act is subject to limitations and the modern view is that these limitations may be expanded. ‘This privilege has no longer adequate reason for retention. In an age which has so far rationalized, depolarized and dechivalrized the marital relation and the spirit of femininity as to be willing to enact complete legal and political equality and independence of man and woman, this marital privilege is the merest anachronism in legal theory and an indefensible obstruction to truth in practice____’ Wigmore on Evidence, Vol. VIII, § 2228, page 221.
 

 
 *241
 
 205 Pa.Super. at 309-10, 209 A.2d 1. In
 
 Kine,
 
 as in
 
 Kerr, supra,
 
 the Court held that the privilege would not apply to shield one spouse from testifying as to a fraudulent transaction existing between husband and wife:
 

 The prohibition against the competency of husband and wife to testify against each other operates only within proper bounds. It was not intended in the act to supply the means of protecting another in a fraudulent transaction nor to render husband and wife secure in the enjoyment of the fruits of fraud.
 
 [Kerr,
 
 148 Pa.Super. at 384, 25 A.2d 737]. See also:
 
 Commonwealth v. Wilkes,
 
 414 Pa. 246, 199 A.2d 411 (1964). “Not only is the policy of the privilege against a wife’s testimony not seriously violated ... but otherwise the husband could always shield himself from liability by choosing to make his wife his agent to transact business.” Wigmore on Evidence. Vol. VIII, § 2232, pages 227, 228.
 

 Kine, supra,
 
 205 Pa.Super. at 310, 209 A.2d 1.
 

 In another group of cases, the courts distinguish between statements of one spouse which are directly
 
 against
 
 the other and statements which are factual or lead the listener to discover evidence. In
 
 Commonwealth v. Wilkes,
 
 414 Pa. 246, 199 A.2d 411 (1964),
 
 cert, denied
 
 379 U.S. 939, 85 S.Ct. 344, 13 L.Ed.2d 349 (1964), the Supreme Court distinguished
 
 Fisher
 
 so as to hold certain evidence inadmissible. In
 
 Wilkes,
 
 the Commonwealth alleged that the defendant and his son were involved in an illicit relationship with the same woman, and that the existence of this relationship provided defendant with a motive for killing his son. The wife lived apart from her husband; two days after the killing the wife searched her husband’s home and discovered five love letters defendant had written to the woman. After the wife delivered the letters to the authorities, they were admitted into evidence against the defendant. Defendant was convicted of second degree murder, and on appeal, he argued that the admission of the letters violated the rule of spousal incompetency. The Court disagreed, distinguishing Fisher:
 

 
 *242
 

 Fisher
 
 is clearly distinguishable. Therein personal letters addressed and sent to his wife by a defendant who was in jail were delivered by her to the district attorney. They were ruled inadmissible at trial as being in contravention of the Act of 1887. Herein, the letters were not addressed or sent to the wife; they were not a communication from one to the other; their exposure breached no confidence between them; they were not her property; she had no right or interest therein. The circumstances here obtaining do not constitute the giving of testimony by the wife against the defendant.
 

 414 Pa. at 250-51, 199 A.2d 411,
 
 citing Commonwealth v. Smith,
 
 270 Pa. 583, 113 A. 844 (1921).
 

 Similarly, in
 
 Commonwealth v. Garrison,
 
 398 Pa. 47, 157 A.2d 75 (1959), the Court focused upon the fact that the statement of the spouse was offered by a competent witness and the statement was not directly against the spouse. In
 
 Garrison,
 
 the husband, wife, and three other individuals were convicted of participating in a burglary which caused the death of the homeowner. In the trial of the husband, one of the previously convicted individuals was permitted to testify regarding the statements of appellant’s wife, who told him that the elderly victim’s home would make a good target for a burglary. On appeal, husband claimed that the statements violated the rule prohibiting spouses from testifying against one another. The Supreme court rejected this argument:
 

 Mrs. Garrison did not testify, and we do not regard the evidence ascribed to her as being the equivalent of testimony. It was not against her husband and did not refer to him: hence it falls within the rule of
 
 Welker v. New York Central Railroad,
 
 275 Pa. 82 (1922), 118 A. 615, and
 
 Commonwealth v. Johnson,
 
 213 Pa. 432 (1906), 62 A. 1064, that: “Facts which have been learned by competent witnesses are not to be excluded because the witness may have been put on the track of them by information
 
 *243
 
 coming incidentally or otherwise from the prisoner or his wife.”
 
 [14]
 

 398 Pa. at 51, 157 A.2d 75.
 

 One additional case bears mention. In
 
 Commonwealth v. Marker,
 
 25 Pa.D. & C.3d 119 (1982) (Somerset County), an arson case, defendant’s wife had arrived at a neighbor’s house on the day of the fire, excited and apparently bruised, and told the neighbor that defendant set their home on fire. Over objection, the court permitted the neighbor to testify
 
 [15]
 
 regarding the wife’s statement to him inculpating defendant. After finding that the statements fell within the res gestae “excited utterance” exception to the hearsay rule, the court addressed and rejected defendant’s contention that, by admission of the third party testimony, the wife was “permitted to testify” within the meaning of and in violation of the statute:
 

 ... [T]he prevailing rule is that res gestae (excited utterance) declarations are admissible in evidence through the testimony of a competent third party auditor even though the declarations were made by an incompetent witness. The circumstances making them admissible not only vouch for their reliability, but also negative deliberate
 
 *244
 
 evasion of the incompetency statute. The exception applies to incompetency as between husband and wife.
 

 25 Pa.D. & C.3d at 127 (footnotes omitted). The court stated further:
 

 Res gestae statements lack that deliberate quality. Moreover, as respects family harmony, third party evidence of a spouse’s spontaneous excited on-the-spot utterance is not nearly as offensive or disturbing to domestic peace as is confronting the spouse on trial with the other spouse’s direct testimony from the stand which was the original target of the prohibition.
 

 The court concluded that the wife’s extrajudicial statement was properly admitted.
 
 See also Commonwealth v. Hess,
 
 270 Pa.Super. 501, 411 A.2d 830 (1979) (statements by wife against defendant held admissible under res gestae exception; no mention of interspousal incompetency).
 

 C.
 

 Bearing these more recent cases in mind, we conclude that admission of the spouse’s extrajudicial statements in the instant case did not offend the marital incompetency statute. We find that hearsay statements of a spouse recounted by a third party under oath pursuant to a recognized hearsay exception do not constitute testimony by a spouse. Consequently, 42 Pa.C.S.A. § 5913 did not provide a basis for appellant’s prior counsel to object to Mr. McLaughlin’s testimony as being violative of spousal incompetency.
 

 While the statutory bar had been judicially extended in some earlier cases to situations where hearsay testimony or other artifices were used to purposefully evade the statutory proscription, no such circumstances exist here so as to warrant such an exercise of judicial discretion. Admission of the statement breached no confidence between husband and wife, and therefore did not offend the rationale of the privilege.
 
 See Wilkes, supra.
 
 Moreover, the statement
 
 *245
 
 lacks the deliberate quality, evidencing an intent to evade the Spousal Immunity Act, which might, under other circumstances not here present, justify an extension of the statute to a spouse’s extrajudicial statements.
 
 See Marker, supra.
 
 Rather, the statement was made by appellant’s wife at a time and in a manner which establishes the absence of such a purpose; the statement only acquired its incriminating nature by virtue of subsequent acts and even then its incriminating nature was inferential rather than direct or accusatory.
 
 See generally
 
 Annotation,
 
 Spouses Betrayal or Connivance as Extending Marital Communications Privilege to Testimony of Third Person,
 
 3 ALR 4th 1104 (1981 & 1987 Supp.).
 

 Finally, we note that while this Court is powerless to effect the repeal of the Spousal Immunity Act, 42 Pa.C.S.A. § 5913, uniform well-reasoned criticism of the rule provides ample justification for the courts to confine the Act’s effects to cases in which the letter of the Act requires application of this antiquated doctrine.
 
 Cf. Commonwealth v. Scott,
 
 516 Pa. 346, 349-351, 532 A.2d 426, 429 (1978).
 

 Based upon the foregoing, we conclude that the objection which appellant now advocates would have been meritless if voiced at trial. Trial counsel was therefore not ineffective in failing to present a meritless objection.
 
 Commonwealth v. Peterkin,
 
 511 Pa. 299, 513 A.2d 373 (1986);
 
 Commonwealth v. Davis,
 
 363 Pa.Super. 562, 526 A.2d 1205 (1987).
 

 Accordingly, judgment of sentence is affirmed.
 

 HOFFMAN, J., concurred in the result of the Majority Opinion.
 

 [1]
 

 . The trial court denied appellant’s post-trial motions on January 2, 1986 and sentenced appellant on February 24, 1986. In June 1986, appellant filed a post-conviction petition, alleging ineffective representation during trial and ineffectiveness of counsel for failure to perfect a timely appeal. Following a hearing, the court below entered an order granting permission to file an appeal
 
 nunc pro tunc.
 
 In all other respects, the petition was denied.
 

 [2]
 

 . Appellant also contends that the guilty verdict was against the weight of the evidence. A weight of the evidence claim will entitle appellant to relief only if the verdict is so contrary to the evidence that it shocks the conscience; this determination is addressed to the sound discretion of the trial judge, and will be reversed only for an abuse of that discretion.
 
 Commonwealth v. Zapata,
 
 447 Pa. 322, 290 A.2d 114 (1972);
 
 Commonwealth v. Holmes,
 
 315 Pa.Super. 256, 461 A.2d 1268 (1983). We find no abuse of discretion in the instant case.
 

 [3]
 

 . 18 Pa.C.S.A. § 3301(a)(l)(i).
 

 [4]
 

 . 18 Pa.C.S.A. § 3301(a)(l)(ii).
 

 [5]
 

 . 18 Pa.C.S.A. § 3301(c)(3).
 

 [6]
 

 . 18 Pa.C.S.A. § 3301(c)(2).
 

 [7]
 

 . 18 Pa.C.S.A. § 3302(b).
 

 [8]
 

 . 18 Pa.C.S.A. § 3304(a)(1).
 

 [9]
 

 . Appellant did not testify at trial.
 

 [10]
 

 . The fact that the witnesses’ time estimates do not coincide exactly is not, of course, fatal to the Commonwealth's case. Witness Myers stated that he
 
 estimated
 
 the time rather than that he was certain of the exact time. In any event, the variation in the witnesses’ time estimates amounts to only a few minutes at most; the jury was not, as defendant claims, required to resort to speculation. (N.T. 6/13/85 at 14, 22; N.T. 6/13/85 at 123, 127).
 

 [11]
 

 .
 
 See
 
 McCormick,
 
 Evidence
 
 § 249 at p. 733-4 & n. 8 (3rd ed. 1984); Binder,
 
 Hearsay Handbook,
 
 § 2.12 at pp. 37-38 (2nd ed. 1983). The statement may be offered to show the effect on the listener and the state of mind produced, including motive.
 

 [12]
 

 . Section 5913 must be distinguished from 42 Pa.C.S.A. § 5914, the confidential communications privilege statute, which prevents testimonial disclosure of confidential marital communications over the objection of either party.
 

 [13]
 

 . Defendant also argued that admission of the letters violated the privilege against disclosure of confidential marital communications. The statute at that time, former 19 P.S. § 683, provided that "neither husband nor wife shall be competent or permitted to testify against each other ... nor shall either husband or wife be competent or permitted to testify to confidential communications made by one to another.”
 

 [14]
 

 . In
 
 Welker,
 
 which involved the instituting of criminal proceedings based upon facts and evidence provided by the spouse, the Supreme Court stated:
 

 ... [P]laintiff contends error was committed in receiving evidence of facts learned through declarations or acts of plaintiff's wife, on the ground that she would not have been a competent witness against him, and, consequently, statements made by her were incompetent. While the wife would not have been a competent witness against her husband, there is no rule of law which prevents a third person from instituting criminal proceedings based on facts learned through information given by the wife of the accused. The admission of such facts in evidence is not permitting the wife to testify against her husband____
 

 275 Pa. at 86, 118 A. 615.
 

 [15]
 

 . The testimony was presented at defendant’s preliminary hearing. The admission of these statements came for review by the common pleas court when defendant filed a petition for writ of habeas corpus, alleging that the evidence was insufficient to establish a
 
 prima facie
 
 case of arson and to hold him over for trial.