579 A.2d 1309

COMMONWEALTH of Pennsylvania, Appellee,

v.

Nikolai ZDRALE, Appellant.

Superior Court of Pennsylvania.

Argued May 23, 1990.

Filed Aug. 13, 1990.

Reargument Denied Sept. 27, 1990.

168

170

S. Michael Streib, Pittsburgh, for appellant.

Lawrence N. Claus, Deputy Atty. Gen., Pittsburgh, for Com., appellee.

Before TAMILIA, JOHNSON and MONTGOMERY, JJ.

PER CURIAM:

Appellant, Nikolai Zdrale, was convicted by a jury of criminal solicitation and conspiracy. Post-trial motions were denied and appellant was sentenced to five (5) to ten (10) years imprisonment. This direct appeal followed. We affirm.

On appeal, appellant claims that the trial court erred by admitting into evidence hearsay statements of an alleged co-conspirator, by consolidating the trial and by admitting statements made by the co-defendant.

The charges arose from a conspiracy which included multiple actors. The central figure in the conspiracy was William Fiore. Mr. Fiore was a landfill operator and had experienced numerous regulatory problems with the Pennsylvania Department of Environmental Resources (D.E.R.). Due to the D.E.R.'s enforcement over Mr. Fiore's landfill operations, he was losing approximately $300,000.00 a month, and his operations were shut down. In May of 1984, Mr. Fiore told Vito Vincent Luci, a D.E.R. employee, that he had paid someone to kill two D.E.R. officials. The two officials were Charles A. Duritsa and Howard Wein.

In 1985, Mr. Fiore enlisted appellant in his plot. Appellant was also a landfill operator and a businessman in Greensburg. It was arranged that Mr. Fiore would pay Leroy Bradford Smith to kill Mr. Duritsa. The money would be given to appellant, who in turn would pay Mr. Smith. Another actor, James Marvin Thomas, was also brought into the plot. Mr. Thomas was one of appellant's employees and his primary responsibility was to drive.

In August of 1985, Mr. Thomas drove appellant and Mr. Smith from Greensburg to the East Liberty section of Pittsburgh. The three waited in East Liberty for approximately 40 to 45 minutes, across the street from the Highland Building. The D.E.R. was located in the Highland Building. A man walked out of the building and appellant pointed him out to Mr. Smith. Mr. Smith proceeded to follow the man for awhile and then returned to the others and they went back to Greensburg.

In September of 1985, Mr. Smith asked Mr. Thomas to drive him to Bedford, Pennsylvania, to pick up a truck. The two went to Bedford in appellant's automobile. Mr. Smith drove the truck back to Greensburg and parked at an Elby's Restaurant. Mr. Thomas followed in appellant's car. The following day, Mr. Smith asked Mr. Thomas to follow him to Pittsburgh to drop off the truck, which was still parked at the Elby's restaurant. This conversation transpired in appellant's hearing aid store. They first drove to Honda Village, purchased two pairs of gloves and then picked up the truck at the Elby's restaurant. Mr. Thomas followed Mr. Smith to the East Liberty section of Pittsburgh. Appellant's car was used at all times.

Mr. Thomas was instructed to park the car and get in the truck. Mr. Smith then drove the truck around a certain route for a while. They returned to the car and Mr. Thomas was instructed to get in the driver's seat of the truck. Mr. Smith went to the trunk of the car, pulled out a seabag and returned to the truck. Mr. Smith sat in the passenger seat and pulled a shotgun from the seabag and laid it across his lap. Mr. Smith instructed Mr. Thomas to

drive the truck around the same route they had driven before. After driving around for a while Mr. Smith told Mr. Thomas to pull the truck into an alley. Mr. Smith wiped down the inside of the truck with alcohol, which was also in the seabag, and the two went back to the car and drove to Greensburg.

During the drive back to Greensburg, Mr. Smith told Mr. Thomas about the contract on Mr. Duritsa's life and how he had planned to execute the contract. Mr. Smith also told Mr. Thomas that he was initially going to be paid $5,000.00 for the contract. Mr. Smith returned to East Liberty on another occasion with the purpose of killing Mr. Duritsa, but suspected a set up and aborted the attempt.

Appellant first contends that the trial court erred in permitting the admission of out-of-court statements made by Mr. Smith during the drive from Pittsburgh to Greensburg, in September of 1985. Appellant claims that the testimony was inadmissible hearsay and did not fall under the co-conspirator exception to the hearsay rule. The Commonwealth did not call Mr. Smith as a witness but presented Mr. Thomas. Mr. Thomas reiterated the conversation he had with Mr. Smith while traveling from Pittsburgh to Greensburg, after the aborted attempt on Mr. Duritsa's life. The testimony is as follows:

Q. And, did Mr. Smith talk about that gun?

A. Yes.

Q. What did he say to you?

A. He says that if the shotgun wouldn't do it that he was going to put on a jogging outfit and jog right past the guy and shoot him in the head?

Q. Who was the guy he was talking about?

A. State official.

Q. Is that what he told you?

A. Yeah.

Q. When did he tell you that?

A. On the way back to Greensburg.

Q.  Did Mr. Smith tell you anything else on the way back to Greensburg?

A.  Yes, he told me about who paid him.  He told me that Bill Fiore paid him $5,000.00 and he gave it to Nick Zdrale to give to Brad, and Brad felt that there was more money involved that Nick Zdrale took some of it.

Q.  Did he tell you what this money was being paid for?

A.  To kill this attorney.

Q.  He tell you why Mr. Fiore wanted this person killed?

A.  Yeah, he told me that this attorney testified against Bill Fiore.

Q.  What was the amount if you recall that he said was paid?

A.  $5,000.00

(Tr. 144, 145.)

Appellant is correct in that the testimony was hearsay.  Hearsay is an out-of-court statement offered for the truth of the matter asserted.  *Commonwealth v. Thomas,* 372 Pa.Super. 349, 539 A.2d 829 (1988).  However, the testimony clearly falls within the co-conspirator exception to the hearsay rule.  The co-conspirator exception allows the introduction of statements made by a co-conspirator, if they were made during the conspiracy, in furtherance thereof, and where there is other evidence of the existence of a conspiracy.  *Commonwealth v. Dreibelbis,* 493 Pa. 466, 426 A.2d 1111 (1981).

Appellant claims that since the attempt on Mr. Duritsa's life failed the conspiracy ended and thus, the statements did not satisfy the in furtherance requirement of the exception.  Appellant further claims that the statements were merely idle conversation.  The fact that the attempt failed does not by itself constitute abandonment of the conspiracy.  The general rule is that a conspiracy ends when its principal objective is accomplished.  *Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980); *Commonwealth v. Watson,* 355 Pa.Super. 160, 512 A.2d 1261 (1986).  Even if the central objective has been nominally

attained, the conspiracy does not automatically end. *Evans, supra.*

■ The evidence established that the principal objective of the conspiracy was to kill Mr. Duritsa. This objective was not accomplished at the time of the conversation since the attempt was aborted. Mr. Smith returned to East Liberty, on another occasion, to make a further attempt on Mr. Duritsa's life and there is no indication that any of the co-conspirators withdrew from the conspiracy. In order for appellant to show effective detachment from the conspiracy it is necessary that the co-conspirators were given a reasonable opportunity to refrain from further action. *Commonwealth v. Young,* 233 Pa.Super. 429, 335 A.2d 498 (1975). The other conspirators were not given an opportunity to refrain from further action because when the conversation transpired neither appellant nor Mr. Fiore was aware of the failed attempt.

■ Furthermore, the conversation between Mr. Smith and Mr. Thomas was not merely idle conversation. When the content of the conversation is examined, it is apparent that Mr. Smith was informing Mr. Thomas of aspects of the conspiracy and further steps to be taken. Therefore, the conversation was more than idle conversation and satisfied the in furtherance requirement of the co-conspirator exception to the hearsay rule. *U.S. v. Gibbs,* 739 F.2d 838 (3rd Cir.1984).

■ Appellant also claims that the statements were inadmissible under 42 Pa.C.S. § 5912. Mr. Smith was a convicted perjurer and under 42 Pa.C.S. § 5912 was not considered a competent witness. The statute at issue provides:

§ 5912. Disqualification by perjury

In a criminal proceeding, a person who has been convicted in a court of this Commonwealth of perjury, which term is hereby declared to include subornation of or solicitation to commit perjury, shall not be a competent witness for any purpose, although his sentence may have been fully complied with, unless the judgment of convic-

tion be judicially set aside or reversed, or unless the proceeding is one to punish or prevent injury or violence attempted, done, or threatened to his person or property; in which cases he shall be competent to testify.

42 Pa.C.S. § 5912.

Although there is little legal precedent on this issue, this court has held that the statute is to be strictly construed. *Commonwealth v. Meholic*, 341 Pa.Super. 342, 491 A.2d 848 (1985). (a witness who had been charged with perjury but not yet tried or convicted was competent to testify).

The rules of statutory construction mandate that the language of a statute must be construed according to its plain meaning and, if possible, interpreted in a manner which gives effect to each and every provision of the act. 1 Pa.C.S. § 1903; *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982).

According to the plain meaning of 42 Pa.C.S. § 5912, a person convicted of perjury cannot be called as a competent witness to testify. The term "testify" is defined as,

"To bear witness; to give evidence as a witness; to make a solemn declaration under oath or affirmation, in a judicial inquiry, for the purpose of establishing or proving some fact."

Black's Law Dictionary 5th ed. at 1323 (1979).

The statute does not prohibit the introduction of out-of-court statements made by a convicted perjurer. In the instant case, Mr. Smith's statements were not the equivalent of testimony because he did not testify.

In support of this proposition we adopt the reasoning announced in *Commonwealth v. Blough*, 369 Pa.Super. 230, 535 A.2d 134 (1987). In the *Blough* case, a wife's extra-judicial statements were not considered testimony. During trial the statements were recounted by a third party under oath pursuant to a hearsay exception, and thus did not violate spousal immunity. This reasoning is also in accord with the case of *Commonwealth v. Garrison*, 398 Pa. 47, 157 A.2d 75 (1959). In the *Garrison* case, a wife, who was

a co-conspirator, did not testify at her husband's trial but evidence of a conversation between the wife and another co-conspirator was admitted. The testimony was admitted under the co-conspirator exception to the hearsay rule and found not to violate spousal immunity.

The Honorable Bernard F. Scherer aptly observed in his opinion, and we agree,

"Section 5912 must be interpreted as a rule protecting the integrity of the trial process insofar as it relates to the importance of the oath administered to witnesses who appear in person for the jury's consideration."

(Trial Court opinion p. 11).

The introduction of Mr. Smith's statements did not compromise the importance of the oath and did not violate 42 Pa.C.S. § 5912.

Appellant further claims that because Mr. Smith was a convicted perjurer his statements lacked an independent indicia of reliability. The fact that the statement falls under the co-conspirator exception to the hearsay rule infers sufficient reliability. *Watson, supra.*

Appellant next contends that the trial court abused its discretion by consolidating appellant's trial with that of William Fiore. The decision whether to consolidate is within the sound discretion of the trial judge and will not be reversed absent a manifest abuse of discretion, or a showing of prejudice and clear injustice. *Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491 (1988); *Commonwealth v. Thomas,* 361 Pa.Super. 1, 521 A.2d 442 (1987). When conspiracy is charged, conspirators should be tried together unless it can be shown that one or more will suffer actual prejudice. *Commonwealth v. Hamm,* 325 Pa.Super. 401, 473 A.2d 128 (1984).

In the instant case, both defendants were charged with conspiracy. The charges arose from the same acts and much of the same evidence was necessary and applicable to both defendants. The Commonwealth presented seventeen witnesses and the trial lasted for seven days. It was not an

abuse of discretion to consolidate because separate trials would have required the time consuming duplication of all of this evidence. Therefore, joinder was in the interest of judicial economy and avoided unnecessary repetition of evidence. *Commonwealth v. Patterson,* 519 Pa. 190, 546 A.2d 596 (1988); *Commonwealth v. Granberry,* 346 Pa.Super. 395, 499 A.2d 671 (1985).

█ Appellant claims that he was prejudiced by consolidation because various statements made by Mr. Fiore, which did not implicate appellant, were admitted into evidence. Appellant also claims that a cautionary instruction should have been given. Appellant first cites to statements made to Vito Vincent Luci. The testimony revealed that Mr. Fiore told Mr. Luci that he was going to have Mr. Duritsa and Mr. Wein killed. The conversations between Mr. Fiore and Mr. Luci were tape recorded. These conversations were redacted before being played for the jury.

Appellant next cites to statements made by Mr. Fiore to Stanley P. Spolnick. Mr. Fiore and Mr. Spolnick were both incarcerated in the Westmoreland County Detention Center. The testimony of Mr. Spolnick was as follows:

Q. Did Mr. Fiore mention the name of Charles Duritsa?
A. Yes, he did.
Q. What did Mr. Fiore say in that regard?
A. He says, um, he was having trouble with the D.E.R. Official, he named him. His name was Duriska (sic.), and, um, it was over permits for dumps, at his dumping sites that something happened where he lost 5,000,000 bucks because he wouldn't get these permits no more. He was a little upset. So, then he says, um, he hired Thomas and another individual I don't know remember who he said he was, but he said I hired him to kill Duriska (sic.).
(Tr. 690, 691).

█ We are unable to see how this evidence prejudiced appellant. The statements never mentioned appellant. Apparently, appellant's trial counsel did not view this evidence

as prejudicial because appellant was not implicated. Initially, appellant's trial counsel objected to the tape-recorded conversations between Mr. Fiore and Mr. Luci, but after hearing the evidence did not request a cautionary instruction. Appellant's trial counsel repeatedly emphasized that appellant's name was never mentioned. Furthermore, a co-defendant's statement, which is redacted to eliminate references to the other co-defendant, is admissible and not prejudicial if it does not identify the co-defendant as a participant in the crime. *Commonwealth v. Marsh,* 388 Pa.Super. 610, 566 A.2d 296 (1989). Appellant has merely speculated that prejudice occurred, and we will not find an abuse of discretion without a showing of actual prejudice. *Patterson, supra.*

In the alternative, appellant contends that the trial court erred by admitting these statements into evidence on several theories. Appellant first claims that the statements made to Mr. Luci were inadmissible because they occurred prior to the commencement of the conspiracy. Rulings on evidentiary matters are within the sound discretion of the trial court and will not be reversed absent a flagrant abuse of discretion. *Commonwealth v. Jermyn,* 516 Pa. 460, 533 A.2d 74 (1987). The remoteness in time of evidence showing instances of hostility and strained relations goes to the weight of the evidence and not its admissibility. *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974). In the instant case the statements were highly relevant to prove motive and intent. *Commonwealth v. Gwaltney,* 497 Pa. 505, 442 A.2d 236 (1982); *Commonwealth v. Kaster,* 300 Pa.Super. 174, 446 A.2d 286 (1982). Moreover, evidence of a defendant's actions before and after the commission of a crime may be admissible to show motive and malice. *Kaster, supra.*

Appellant also claims that both the testimony of Mr. Luci and Mr. Spolnick violated the case of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Appellant's reliance on *Bruton* is misplaced. The *Bruton* rule is only applicable when a confession is inculpatory. In

the instant case, the statements did not expressly implicate appellant as an accomplice. Appellant's name was not even mentioned in these statements. The *Bruton* case is inapposite and it was not an error to admit these statements. *Commonwealth v. Hassine,* 340 Pa.Super. 318, 490 A.2d 438 (1985).

Judgment of sentence affirmed.