# Commonwealth *v.* Fisher, Appellant.

*Criminal law—Murder—Technical defenses—Evidence—Husband and wife—Letters from husband to wife.*

While courts will not be astute to sustain technical assignments of error in a homicide case, where from a consideration of the whole record it appears no substantial injustice was done defendant, and that a fair trial on the merits had been accorded him, they are not at liberty to disregard established rules of procedure, or settled rules of evidence, or the constitutional and statutory rights of parties.

Letters dictated by a prisoner in jail charged with murder to fellow prisoners, addressed to the prisoner's wife, duly mailed, and delivered by her to the district attorney, are not admissible against the husband at his trial. The admission of such letters is in effect permitting the

wife to testify against her husband, which cannot be done under the statute.

MITCHELL, C. J., and POTTER, J., dissent.

Argued April 27, 1908.  Appeal, No. 93, Jan. T., 1908, by defendant, from judgment of O. & T., Northumberland Co., Feb. T., 1907, No. 2, on verdict of guilty of murder of the first degree in case of Commonwealth of Pennsylvania v. Henry Fisher.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Reversed.

Indictment for murder.  Before SAVIDGE, P. J.

At the trial the district attorney offered two letters dictated by the prisoner when in jail to two other prisoners, addressed to his wife, and duly mailed to her.

Mr. J. A. Welsh : This offer is objected to, 1. For the reason that they were not written by the defendant, and that the defendant did not know what was in the letters; that they were written by a person and mailed to his wife.

2. For the reason that the letter dated December 21, 1906, is a letter from Fisher to his wife, and that it is a confidential and privileged communication sent to Mrs. Fisher and received by her, and confidential communications between husband and wife cannot be received in evidence at this time.

3. The letter dated January 25, 1907, is also objected to because it is a letter addressed to Mrs. Fisher, and, as we understand, was received by her, and is also a confidential and privileged communication between husband and wife.

4. The statement made to the district attorney is also objected to because it was written by Elmer Farnsworth, a prisoner in the jail, who is convicted of felony, and has been sentenced and his term has not expired, and he is, therefore, an incompetent witness to give testimony in any case.

The witness Wilvert has also been convicted of a felony, and is incompetent to give testimony in the case.

\*     \*     \*     \*     \*     \*     \*     \*

Mr. Shipman : We offer the statements and the letter in evidence, first, for the purpose of showing that the defendant was upon the scene of the crime at the time it was committed as particeps criminis.

2. For the purpose of showing the instrument with which the death was caused.

3. For the purpose of showing the time of death.

4. For the purpose of showing that the murder was willful, deliberate and premeditated.

5. For the purpose of showing a motive for the crime.

Mr. J. A. Welsh : We renew our objections.

\*     \*     \*     \*     \*     \*     \*     \*

The Court : 1. The Act of May 23, 1887, P. L. 158, makes competent persons under trial and conviction for offenses or crimes other than perjury or subornation of perjury. This disposes of the objections on that ground.

2. The letters to the wife may, or may not, have been delivered to her. Assuming that they were, she is not called upon to testify against him. The contents of the letters are not the testimony of the wife, but are the statements of the defendant himself.

\*     \*     \*     \*     \*     \*     \*     \*

The objections are overruled, evidence admitted and bill sealed for the defendant.

P. J.   [Seal.]

The letters were as follows :

" Sunbury, Pa., December 21, 1906.

" Mrs. Ella Fisher, Shamokin, Pa.

" My dear wife : I just received your letter to-night. You don't need say that you don't know anything about this case for you are not as innocent, as you say you are. You know you tried your best to get the woman out of the way long ago for the little she had. It is your fault that I am here for putting my shirt and the carpet in the place you did. I am sorry I did not tell the truth right away when it happened, and then you would be here too. You are no woman or you would not have laid around with another man the way you did in Shenandoah. You ask me to sign off but there is no signing on my part and the signing you will get is down here in jail. If you would have been any kind of a woman you would have been down before I gave you money enough. I have been very sick and that is all I have to say.

[Signed]     " Henry Fisher."

Letter of January 25, 1907, as follows :

"SUNBURY, PA., January 25, 1907.

"My Dear Wife : I now pencil this letter to let you know that I hope you will stick to me through this position that I am now held in.

"The shirt I had on that Sunday night I was intoxicated, I also had on to work Monday and Tuesday, but the day of the murder I did not have the shirt on for you took the shirt from my back yourself.   You know I was bleeding at the nose and mouth the Sunday night I was out late under the influence of liquor.   You also know it was you and I that went in the house together and found she had been murdered, so if you swear otherwise you will be convicting yourself as well as me and you know as well as I that if you send me to the death trap you would regret it as long as there is life in your body.   And that knife I had, you know that Mrs. Klinger gave it to me the first Sunday we were there and also gave you a small knife.

"You also know that time I talked about things and turn right around and say I did not say it.   You also know I have been that way for about two years and I am not accountable for many things I have said within that time.   I write you these lines so as to let you know just how things stand and that I want to subpœna you as a witness on my side.   You also know that someone could have went into the house and took that shirt out of the closet along with the keys the lawyers said they found there.   And the blood on my trousers, that was found, I spilled on them the night I emptied the water after they washed her off.   So now I hope you will stick to me as a wife should through this awful charge against me.

"You remember you took that shirt off the Sunday night I came home drunk for you said you would not sleep with me if I kept it on and you asked me where I was and I told you I was too drunk to find my way home, and that I fell down over the bank, in the crick, and that is the way I got the blood on the shirt, and you remember you also washed me off after I got home.   And you know we also got along with the woman and never had any fights or cross words with each

other.  Now please come down as soon as you can, the quicker the better for both you and I.  You can get in to see me at any time during the week.  From your husband.

[Signed]    "HENRY FISHER,
"39 N. Second St., Sunbury, Pa."

Verdict of guilty of murder of the first degree, upon which judgment of sentence was passed.

*Error assigned* among others was (4) admission of letters as above.

*J. A. Welsh,* with him *John I. Welsh* and *C. K. Morganroth,* for appellant.—The letters were not admissible : Peck v. Ward, 18 Pa. 506 ; Robb's Appeal, 98 Pa. 501 ; Cornell v. Vanartsdalen, 4 Pa. 364 ; Brock v. Brock, 116 Pa. 109 ; Seitz v. Seitz, 170 Pa. 71 ; Hayes's Estate, 23 Pa. Superior Ct. 570 ; Johnson v. Watson, 157 Pa. 454 ; Robin v. King, 2 Leigh (Va.), 140 ; Reg. v. Pamenter, 12 Cox. C. C. 177 ; Mercer v. State, 40 Fla. 216 (24 So. Repr. 154).

A letter written by a husband to his wife while he is imprisoned on a charge of murder, and voluntarily surrendered by her, is a confidential communication, and is not admissible against him on trial : Wilkerson v. State, 91 Ga. 729 (17 S. E. Repr. 990) ; Lanctot v. State, 98 Wis. 136 (73 N. W. Repr. 575) ; People v. Mullings, 83 Cal. 138 (23 Pac. Repr. 229) ; Duttenhofer v. State, 34 Ohio, 91.

*D. W. Shipman,* with him *A. K. Deibler,* district attorney, and *H. W. Cummings,* for appellee.

OPINION BY MR. JUSTICE ELKIN, May 25, 1908 :

It has been said in several of our cases that courts will not be astute to sustain technical assignments of error in homicide cases where from a consideration of the whole record it appears no substantial injustice was done defendant, and that a fair trial on the merits has been accorded him.  This must not be understood to mean, however, that courts are at liberty to disregard established rules of procedure, or settled rules of evidence, or the constitutional and statutory rights of parties, in the trial of such cases.  It may be, under existing conditions,

and in view of our present state of society, there should be some relaxation of the old rigid rules of the common law, applicable to the trial of such cases, which grew out of an order of things at a time when the law-making bodies made petty offenses felonies and the common everyday practices of the people misdemeanors. Indeed, we are inclined to think there should be less insistence on technicalities and more stress put upon a course of procedure intended to develop the merits. In olden times heavy burdens were placed on the people, who required all the safeguards the courts could give in the trial of criminal cases, in order that some protection should be afforded those charged with crime. Conditions have changed, the number of felonies has been reduced to the minimum, the burden in a general sense has shifted and now rests very heavily on the commonwealth, which is still practically bound by old rules intended for other purposes and growing out of different conditions. Our criminal classes at the present time are very leniently and humanely dealt with, and the wisdom of safe-guarding their trials with all the refinements and technicalities of the common-law procedure may well be questioned. It is well to remember that he who takes the life of another with intent to do so, has offended against the laws of God and man, and a proper regard for the rights of society requires that conviction and punishment should surely follow. It is not the purpose of the law to make it easy for a person guilty of a brutal murder to escape the penalty of his crime, but, on the other hand, a person so charged must be convicted, if at all, according to the law of the land.

The fourth assignment complains that the learned trial judge erred in overruling the objection and admitting in evidence two letters written by fellow prisoners at the dictation and by the request of defendant to his wife. The admission of the letters was objected to on the ground of being confidential and privileged communications between husband and wife. It is argued that this in effect was the giving of testimony by the wife against the husband, which in our state is forbidden by statute. We have concluded that this assignment must be sustained. The letters were produced at the trial by the district attorney, representing the commonwealth, and were inclosed in envelopes postmarked at Sunbury, where mailed,

and at Shamokin, the place of delivery. These facts clearly show that the letters were placed in due course of transmission in the mails, and the presumption arises under the rule of our own cases that letters so mailed were delivered to the party addressed. It is true the evidence does not show how the district attorney got possession of the letters, but the wife having received them, the reasonable presumption is that she gave them to the prosecuting officer, which, in point of fact she did, as is shown by facts subsequently developed. For the purposes of the present case it is not necessary to consider or determine whether the letters were such confidential and privileged communications as not to be admissible in evidence at all under any circumstances, but we do hold that they could not be produced by the wife and offered in evidence as coming from her because this in effect was permitting the wife to testify against her husband as to confidential communications made by one to the other, which cannot be done under our statute. We see no reason why the declarations contained in the letters, if they were made to other parties, competent to testify, should not be proven by them. Because these letters were improperly admitted in evidence, a statutory right vouchsafed to defendant was disregarded, and the fourth assignment of error must be sustained.

Judgment reversed and a venire facias de novo awarded.

Mr. Chief Justice Mitchell, dissenting :

This judgment is being reversed upon two presumptions, one piled on top of the other without any evidence to support either. What the statute prohibits is that "neither husband nor wife shall be competent or permitted to testify against each other . . . . nor shall either husband or wife be competent or permitted to testify to confidential communications made by one to another." There is not a scintilla of evidence that either branch of the statute was violated in this case. The wife did not testify at all. Certain letters written by other persons in the name of the husband and addressed to the wife were offered and admitted in evidence. Whether letters dictated by a husband and written by other persons can be called confidential communications to his wife is at least an open and doubtful question. But waiving that there is no evidence that the letters ever reached the wife. It was

not shown at the trial that they did reach her or even that they were mailed to her.  It is true that subsequent to the trial the envelopes in which the letters were alleged to have been inclosed, were produced and appeared to have been regularly stamped and mailed.  If this fact had appeared at the trial, which it did not, there would under the cases have been a presumption that they reached the wife.  But the presumption would have stopped there.  When the letters appeared at the trial in the hands of the commonwealth there was no explanation asked of the district attorney nor volunteered by him as to how he got them.  The conclusion is jumped at by the further presumption that the wife gave them to the commonwealth, and that in so doing she was testifying to confidential communications.  There is no evidence nor any presumption, either of fact or of law, to support such a conclusion.  She might just as probably have lost them by carelessness, or by the treachery of the fellow prisoners whom the defendant trusted with them in the first place, as they testified on the stand.  It is very old and very sound law that a presumption founded on a presumption is not valid.  I see no good reason for making a different rule in favor of a convicted murderer.  I would affirm the judgment.

Mr. Justice POTTER joins in this dissent.