## Commonwealth v. Chomiak

*Colin Jenei, assistant district attorney,* for the Commonwealth.
*Ronald Elgart,* for defendant.

GARB, *P.J.,* May 22, 1986 — Defendant was convicted in a trial without a jury of burglary, theft, receiving stolen property and conspiracy to commit those crimes. He was tried jointly with Kathryn E. McGee, an alleged co-conspirator, who was likewise charged with the same crimes. Both were convicted. Immediately after the conviction, McGee waived her right to file post-trial motions and was sentenced. Defendant herein filed motions in arrest of judgment and for a new trial. After argument, we deny those motions.

The evidence provided at trial was as follows. Mary Lynn Casmirri testified that on October 24, 1985, she lived at 824 Radcliffe St., apartment C-1, in Bristol Borough. She was employed as a nurse, and on that day she left home for work at the Lower Bucks County Hospital at approximately 8:00 a.m. Upon arriving at work, she deposited her purse containing her pocketbook, car and apartment keys, her wallet containing a VISA credit card as well as her driver's license and a motor vehicle registration in a desk in an office. The desk and office were unlocked. The driver's license and vehicle registration reflected her address. At approximately 12:30 p.m., as she was preparing to leave the hospital for another job, she discovered that her purse and its contents were missing. She notified the hospital security, and a search was conducted without result. It should be noted that she last saw her pocketbook and its contents at approximately 8:15 a.m. Upon finding it missing, she called her landlady in order to be able to gain access to her apartment so that she could get other keys for her car.

At some time between 1:00 and 1:30 p.m., she returned to her apartment. There was no evidence of forced entry. She entered through the front door using her landlady's key. She found that her bedroom had been ransacked and that a jewelry box and the jewelry which it contained and a camera were missing. Among the jewelry missing were gold chains, a diamond dinner ring, a high school ring, a Bulova watch, and a 35 mm. Argus camera as well as the jewelry box. Various of those items were returned to her approximately three days later at the New Jersey State Police Barracks. Among the items returned was the camera. The Bulova watch and the jewelry box were still missing at the time of the trial.

She likewise testified that she did not know defendant or his co-defendant and had never seen them prior to the institution of these criminal proceedings. She testified that she gave no one permission to enter her apartment or to take her purse.

It was stipulated that if Joanne Hollings were called to testify, she would testify that she was Casmirri's roommate. She would testify that she did not take the items which Casmirri found missing, and that she was not there when they were taken. She would further testify that she did not give defendant or his co-defendant permission to enter the apartment and remove this property.

It was likewise stipulated that if Anna Getz were called to testify, she would testify that she lives in the same apartment building as Casmirri, and that at approximately 11:00 a.m. on October 24, 1985, she heard noises in Casmirri's apartment. She would testify that she telephoned Casmirri's apartment, and that a woman's voice answered. She would testify that the person who answered advised her that the number was the number for some busi-

ness establishment, and that she had dialed the wrong number. She would further testify that subsequently she looked in the apartment and saw no one.

Various bank records and photographs taken at the Philadelphia National Bank branch in Levittown, on Route 413, were admitted into evidence. These photographs showed defendant's co-defendant, Kathryn E. McGee, participating in a transaction at the bank. The records would show that the person depicted in those photographs presented a VISA card which was Casmirri's. They would show the date and the time of those transactions being October 24, 1985 at approximately 1:00 p.m. At that time, the transactions would show, and a credit voucher from the bank would show, that the card was used by the person depicted in those photographs receiving cash in the sum of $200.

Frank Rogers testified that he was a New Jersey State Policeman stationed at the New Brunswick Barracks. On October 24, 1985, he was on patrol, in uniform, in a marked New Jersey State Police car. At approximately 4:30 p.m. on that day, he observed a 1977 brown four-door Buick automobile, Pennsylvania license DUK-819, proceeding in excess of 84 miles per hour in a southerly direction on the New Jersey Turnpike in the vicinity of Edison Township. He pulled that vehicle over. At that time, he found that McGee was the driver and defendant herein the passenger in the right front seat. A female child was in the back seat. He testified that he arrested defendant and McGee and took them to the Barracks. He advised them of their Miranda rights. He took McGee's pocketbook from her and searched it at the Barracks. Therein, he found a clear plastic bag containing numerous pieces of jewelry as well as various credentials and credit cards of Casmirri. The

jewelry which he found was subsequently identified by Casmirri as that which was removed from her apartment. He, likewise, searched the car and found an Argus 35 mm. camera in the trunk.

He spoke to McGee at the Barracks after he had conducted the foregoing searches. He asked her why there was identification for two persons in her purse. McGee stated that Casmirri's credentials were left in her apartment one week prior and that she was going to return them.

After searching the car, Rogers, likewise, spoke to Chomiak. He asked Chomiak what articles in the car were his. Chomiak responded that only the camera in the trunk was his. There was only one camera in the trunk, and Casmirri identified that as the one removed from her apartment.

Charles Favoroso testified that he was employed as a detective for Bristol Borough. He testified that on November 7, 1985, he transported McGee from New Jersey to his department where he searched her belongings. Among those belongings he found four handwritten letters. At another proceeding, Chomiak had previously testified that those letters were written by him to McGee. It was stipulated that those letters were to be admitted against Chomiak, but not against McGee. The letters made general reference to the charges against Chomiak and McGee, and in one, encouraged McGee to "stick by your story." In one of the letters, Chomiak stated, "I am sorry I got you into this."

No defense was offered by either defendant.

Defendant raises only one issue post-trial. That issue is the legality of the admission of the four letters seized by Detective Favoroso from McGee. It is defendant's contention that those letters are protected

and barred from admission by the interspousal privilege.*

The letters were written by defendant to McGee while they were both in jail, pretrial. In fact, McGee was in jail in New Jersey awaiting extradition to Pennsylvania on these charges when she received them from defendant. At the suppression hearing, defendant testified that when he sent these letters to McGee, he assumed that they would be read in the prison by the prison officials prior to their delivery to her.

The interspousal privilege in Pennsylvania is based upon two statutes which have been codified in the Judicial Code. The Act of April 28, 1978, P.L. 202, §10, 42 Pa.C.S. §5913, provides in relevent part as follows:

"Except as otherwise provided in this subchapter, in a criminal proceeding husband and wife shall not be competent or permitted to testify against each other. . . ."

In 42 Pa.C.S. §5914, it is provided as follows:

"Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial."

---

* In view of our determination regarding this question, we need not address the question of whether the privilege existed. Defendant contends that he and McGee are "common law" spouses. However, no record was ever made to determine whether that was their status.

Defendant did not actually object to the admission of these letters at trial. However, we do not believe that works a waiver because he had moved to suppress them and a suppression hearing was held and decided against him. See Com. v. Burchard, 349 Pa. Super. 456, 503 A.2d 936 (1986).

Therefore, the thrust of these two sections is that spouses may not be permitted to testify against one another in any criminal proceeding, nor may either testify as to any confidential communication made by one to the other. It has been held that the privilege applies to all communications between the spouses and remains in full force and effect even after divorce or death of a spouse. The purpose, of course, is to preserve the marital relationship by encouraging open and free communication. See Com. v. Peluso, 240 Pa. Super. 330, 361 A.2d 852 (1976). What is protected, however, is testimony by either spouse with respect to interspousal communications. Com. v. Garrison, 398 Pa. 47, 157 A.2d 75 (1959). It was held in Com. v. Jones, 501 Pa. 162, 460 A.2d 739 (1983), that the privilege or prohibition applies to using a spouse's testimony at trial for conviction and not the the action of a police officer in obtaining information in a pretrial or pre-arrest investigation. By the same token, it has been held that communications made in the presence of third persons are admissible. Com. v. Peluso, supra, and Com. v. Clark, 347 Pa. Super. 128, 500 A.2d 440 (1985).

Defendant asserts that the issue herein is decided in his favor by Com. v. Fisher, 221 Pa. 538, 70 Atl. 865 (1908). In that case, our Supreme Court held that the trial court erred when it admitted into evidence certain letters written by defendant to his wife which she had voluntarily delivered to the district attorney, pretrial. We believe that case to be clearly distinguishable from this one. In Fisher, the wife essentially was testifying against defendant when she voluntarily delivered the letters to the district attorney, fully understanding that they would be used against him. Of course, the letters were communications from her husband which he had

not, in any way, agreed to divulge to a third party and which were not, in any other way, divulged to a third party until the wife did so. In the case before us, defendant testified that he fully understood and believed that these letters would be read by prison officials before they were delivered to his wife. Of greater importance, the wife did not voluntarily deliver these letters to the prosecution, thereby offering, although perhaps indirectly, testimony against her husband with respect to confidential communications. Rather, she retained these letters in her possession, and they were taken from her in the normal course of events when she was searched by Detective Favoroso when he took custody of her. Therefore, they fell into the hands of the police without any voluntary act or offer by the spouse, but rather in the normal course of police procedure. In that situation, this case is somewhat similar to Com. v. Jones, supra. Furthermore, it was held in Com. v. Bishop, 285 Pa. 49, 131 Atl. 657 (1926), that letters or correspondence from one spouse to the other may be produced in evidence by a third person into whose possession it has come unless such person obtained it through the agency or connivance of the spouse to whom it was addressed. It this case, the letters were offered in evidence by Detective Favoroso who had them in his possession as the result of a lawful search of McGee. They came into his possession without the agency or connivance of McGee. Therefore, we believe that they were properly admitted.

The privilege established in the statute is a testimonial privilege. We believe that that privilege is against the direct and specific testimony of a spouse at trial or some other judicial proceeding. The seizure of these letters by Detective Favoroso certainly does not constitute testimonial evidence by McGee.

See Commonwealth v. Marker, 25 D.&C.3d 119 (1982). Therefore, we are satisfied that these letters were properly admitted in evidence.

This being the only issue raised post-trial, the post-trial motions are denied.

### ORDER

And now, this May 22, 1986, it is hereby ordered that the post-trial motions are denied, dismissed and overruled, and defendant is directed to appear in Courtroom no. 2, 10:00 a.m., on June 5, 1986, for the purpose of imposition of sentence.