586 A.2d 446

COMMONWEALTH of Pennsylvania, Appellee,

v.

Stephen SKIBICKI, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 29, 1990.

Filed Feb. 15, 1991.

162

David G. Ridge, Erie, for appellant.

Joseph P. Conti, Asst. Dist. Atty., Erie, for Com.

Before KELLY, HUDOCK and FORD ELLIOTT, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence imposed upon Appellant, at the conclusion of a jury trial, after he

was found guilty of one count of Attempted Homicide, two counts of Aggravated Assault, one count of Reckless Endangerment, one count of Possessing an Instrument of a Crime, and one count of Carrying a Firearm Without a License. Timely filed post-verdict motions were denied by the trial court and Appellant was sentenced to an aggregate term of ten to twenty years incarceration. This direct appeal followed. We affirm.

The facts from which these charges arose may be summarized as follows: Appellant and Timothy Horton ("the victim") were at the Hickory Cafe in Erie on November 18, 1988. Although they did not arrive together, the two men were seen talking to each other at the bar. At some point Appellant walked away from the victim toward the front door of the bar. Appellant then allegedly turned around, pulled a gun from his pants, and fired one shot at the victim. This first shot struck the victim in the right arm.

The victim then ran to the back of the bar and, in an attempt to reach safety, tried to exit another door of the bar. When the victim then attempted to exit the bar by frantically kicking at an interior kitchen door, Appellant fired three more shots at him. Two of those shots struck the victim, one shot hitting the victim's leg and one shot hitting him directly below his right eye. After being struck by the third bullet, the victim lay on the floor in an attempt to look as though he were dead. Appellant then turned around and walked out of the front door of the bar.

Appellant's first claim on appeal is that the trial court erred in refusing to allow the victim to be cross-examined concerning his cocaine use and psychiatric history. Appellant claims that since his version of the facts demonstrate that he acted in self-defense, and that he had had a prior altercation with the victim over a cocaine deal, such issues were relevant for cross-examination. Appellant also claims that the victim's psychiatric history was an appropriate basis for cross-examination, since the victim's ability to recall the events of November 18 was at issue. However, this issue was not raised pre-trial or at trial, but was raised

for the first time in post-trial motions. It is therefore waived on appeal. *Commonwealth v. Schneider,* 386 Pa. Super. 202, 562 A.2d 868 (1989), *alloc. den'd in* 525 Pa. 598, 575 A.2d 564 (1989).

Even if this issue was not waived, we would find it to be without merit. The scope and manner of the cross-examination of witnesses lies within the sound discretion of the trial court and we will not overturn such rulings absent an abuse of discretion or a mistake of law. *Commonwealth v. Jackson,* 336 Pa.Super. 609, 486 A.2d 431 (1984). When the obvious purpose of cross-examination is to develop a defendant's own defense, the trial court does not abuse its discretion when limits are placed upon its scope. This rule is especially true when the defendant is not ultimately precluded from presenting the relevant testimony at some other point during the course of the trial. *Commonwealth v. Lobel,* 294 Pa.Super. 550, 440 A.2d 602 (1982).

A review of the record indicates that much time and consideration was given by the trial court as to the relevancy and admissibility of this information. As to the victim's psychiatric history, the trial court ruled that any information within the victim's mental health records which was relevant to Appellant's claim of self-defense could be presented at trial. The trial court, however, found that the records did not contain any such information. Appellant was further allowed to question the victim as to his use of cocaine on or near the date of the shooting and his ability to recall the events which occurred prior to the incident. In order to support his claim of self-defense, Appellant was permitted to introduce the victim's prior conviction of simple assault. Finally, Appellant was permitted to demonstrate the victim's prior assaultive behavior, consistent with the dictates of *Commonwealth v. Amos,* 445 Pa. 297, 284 A.2d 748 (1971), by presenting his own testimony, along with that of another defense witness, regarding a prior altercation between the victim and Appellant during a drug transaction. Thus, the trial court did not abuse its discre-

tion in limiting the scope of cross-examination of the victim to these matters.

Appellant next claims that the trial court erred in not declaring a mistrial when the Commonwealth improperly referred to Appellant's constitutionally protected right to remain silent. The decision to grant or deny a mistrial is within the sound discretion of the trial court and its decision will not be reversed on appeal absent a manifest abuse of discretion. *Commonwealth v. Thomas,* 346 Pa.Super. 11, 498 A.2d 1345 (1985). Every inappropriate remark by the prosecution does not necessitate a new trial; a new trial will only be granted when the remark prejudices the jury to such a degree that it prevents the jury from weighing and rendering a true verdict. *Commonwealth v. Maxwell,* 505 Pa. 152, 477 A.2d 1309 (1984). In making this determination, we must evaluate the remarks in the context in which they occurred. *Commonwealth v. Martin,* 307 Pa.Super. 118, 452 A.2d 1066 (1982). With these standards in mind, we shall review Appellant's claim.

At trial, Appellant's version of the events which occurred on November 18, 1988, briefly, are as follows: Appellant claims the victim approached him in the Hickory Cafe and asked if he had any cocaine. After responding in the negative, Appellant then claims that the victim became belligerent, called him a liar and threatened to take cocaine from him. In an attempt to avoid trouble, Appellant then decided to leave the bar and, as he was doing so, he was pushed out of the bar by the victim and was then grabbed by two men. Appellant then saw a pistol in the waistband of the pants of one of these men, grabbed it, and then proceeded to reenter the bar to tell the barmaid to call the police. Before he could get to the area where the barmaid was located, he noticed the victim running toward the back of the bar and attempting to open a door. When the victim could not open the door, Appellant next claimed that the victim turned around and pointed a gun at him. When Appellant saw the victim do this he "just raised the gun and fired." (N.T. at p. 392).

Appellant claims the following remarks by the Commonwealth, during its summation, were improper:

The defendant tells you that he gets this pistol off two guys, so-called "muggers." He doesn't tell you that either one of those guys had been apprehended, but he does tell you he recognized one of them. He recognized one of them from the bar. But he doesn't tell you that he ever went to the police after that, tried putting together an investigation, tried to work it out, went to the police in any way and said, "Hey, I recognize the guy. I think I can see him again. Let's work on it. Let's get this guy who attacked me." No, he doesn't do anything like that. (N.T. at p. 466)

Appellant admits that these statements are not an explicit direct reference to his Fifth Amendment right to remain silent. He claims, however, that the Commonwealth's reference to the police and the potential police investigation violated the rule against comment on a defendant's right to remain silent. Appellant further argues that when considering the specific nature of the offense and the overall circumstances of the case, the comment was improper, inflammatory and prejudicial. We do not agree.

Appellant's silence to which the Commonwealth referred occurred prior to his arrest for the November 18 shooting. This Court has recognized that the United States Supreme Court has held that the use of pre-arrest silence to impeach the credibility of a defendant does not violate the Fifth or Fourteenth Amendments to the United States Constitution. *Commonwealth v. Hassine*, 340 Pa.Super. 318, 490 A.2d 438 (1985). As stated above, at trial Appellant claimed that his conduct occurred in self-defense. Defense counsel, during his summation, repeatedly attacked the credibility of the victim and his version of the events leading to the shooting. Defense counsel also attempted to bolster the credibility of Appellant's version of what occurred by demonstrating the fact that the latter's testimony was consistent with testimony given by Commonwealth witnesses. Thus, the above comment by the Commonwealth was merely an attack upon

the credibility of Appellant's version of what had transpired prior to the shooting. Since there is no dispute that the silence referred to occurred prior to his arrest, Appellant's claim is without merit.

■ Appellant's final claim is that the trial court erred when it refused to exclude from evidence a letter that Appellant had written, while incarcerated, to his wife and which referred to the criminal case at issue. This letter was received by the Commonwealth after a used car salesman found it in the glove compartment of a car which had been recently traded-in by Appellant's mother-in-law. Appellant claims that this letter was protected by operation of the confidential communications statute which prevents testimonial disclosure of confidential marital communications over the objection of either spouse. Appellant states that this privilege was neither waived by him or his wife nor extinguished by its discovery by a third party and, therefore, that the letter was inadmissible. We do not agree.

This spousal privilege provides:

Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S.A. § 5914. A similar factual pattern to the case *sub judice* was presented in *Commonwealth v. Fisher*, 221 Pa. 538, 70 A. 865 (1908). In *Fisher*, the defendant, while incarcerated and awaiting trial, sent two incriminating letters to his wife. These letters were received by the district attorney and admitted into evidence at trial by the Commonwealth and over defense counsel's objection. The defendant was found guilty of murder in the first degree. Upon a subsequent appeal to the Pennsylvania Supreme Court, defendant argued that the admission of the letters had the effect of the giving of testimony by the wife against the

husband, testimony which was prohibited by statute.[1] The court agreed, stating:

> It is true the evidence does not show how the district attorney got possession of the letters, but the wife having received them, the reasonable presumption is that she gave them to the prosecuting officer ... For the purposes of the present case it is not necessary to consider or determine whether the letters were such confidential and privileged communications as not to be admissible in evidence at all under any circumstances, but we do hold that they cannot be produced by the wife and offered into evidence as coming from her because this was in effect permitting the wife to testify against her husband and as to confidential communications made by one to the other, which cannot be done under our statute.

*Id.*, 221 Pa. at 544, 70 A. at 867.

Unlike the facts in *Fisher*, however, in the present case it is known that the district attorney did not receive the letter at issue from Appellant's wife but from a third party. In this situation we hold that letters or correspondence from one spouse to another may be produced in evidence by a third person where the third person came into possession of the letters under circumstances which did not involve an agency relationship with one spouse or the other and where it is not obtained through the connivance of the spouse to whom the correspondence or letter was addressed. *See Commonwealth v. Bishop*, 285 Pa. 49, 131 A. 657 (1926). The letter at issue was properly acquired by the Erie Police Department during the course of a criminal investigation. Although the letter had been addressed to Appellant's wife, it was not obtained by the Commonwealth through connivance with her. Thus, the letter is not protected under § 5914 and Appellant's claim to the contrary is without merit.

Judgment of sentence is affirmed.

---

1. The statute then in force, and containing language similar to § 5914, was found at 19 P.S. § 684.