J-S25021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID EUGENE RICHARDSON | : | |
| | : | |
| Appellant | : | No. 360 EDA 2021 |

Appeal from the PCRA Order Entered December 21, 2020
In the Court of Common Pleas of Chester County Criminal Division at No(s):
CP-15-CR-0002065-2016

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED NOVEMBER 19, 2021**

David Eugene Richardson appeals from the order denying his Post Conviction Relief Act ("PCRA") petition.[1] Richardson argues his trial counsel was ineffective for failing to file post-trial motions, file a motion to preclude the admission of certain evidence, and object to the Commonwealth's alleged *Brady*[2] violation. We affirm.

A jury found Richardson guilty of Persons not to Possess Firearms, Possession of a Controlled Substance with the Intent to Distribute ("PWID"), Possession of a Controlled Substance, and Possession of Drug

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

Paraphernalia.[3] The facts underlying his convictions have been previously summarized by this Court:

> On March 17, 2016, Detective John DiBattista applied for a search warrant for a house located on Union Street in West Chester, Chester County. . . .
>
> Detective DiBattista met with a CI who advised Detective DiBattista that he or she had purchased cocaine from multiple people inside the Union Street house over a period of several years.
>
> Between the dates of March 6, 2016 and March 8, 2016, Detective DiBattista met with the CI to conduct a controlled buy at the Union Street house. Detective DiBattista provided $40 in pre-recorded currency. While under surveillance, the CI entered the Union Street house. Upon exiting he or she met Detective DiBattista at a pre-determined location. The CI provided two small plastic bags containing a white rock like substance suspected to be crack cocaine, which he or she had purchased at the Union Street house in exchange for the pre-recorded currency. The suspected crack field tested positive for crack cocaine.
>
> Between March 9, 2016 and March 11, 2016, Detective DiBattista again met with the CI for a controlled buy. Detective DiBattista provided the CI with $20 in pre-recorded buy money. While under surveillance, the CI arrived at the Union Street house and entered. When he or she exited, the CI met Detective DiBattista at a predetermined location. The CI turned over a small sealed plastic bag containing suspected crack cocaine. The substance field tested positive for crack cocaine.
>
> On March 16, 2016, Detective DiBattista again met with the CI to conduct a controlled buy. Detective DiBattista provided the CI with $20.00 in pre-recorded money. While under surveillance, the CI went to the Union Street house and entered.

---

[3] 18 Pa.C.S.A. § 6105(a)(1) and 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), and 780-113(a)(32), respectively.

After exiting, the CI met Detective DiBattista at a predetermined location, where he or she turned over a bag of suspected cocaine. The substance field tested positive for cocaine.

The CI informed Detective DiBattista that he or she purchased the controlled substances from a different person for each controlled buy.

Based on the information provided in the Affidavit, the magistrate district judge granted the application for a search warrant.

The police executed the warrant on March 18, 2016. In the front third-floor bedroom, the police recovered a 9 mm handgun with an obliterated serial number, a plastic bag of suspected crack cocaine, small plastic baggies, digital scales, latex gloves, and a plate with a razor blade and cocaine residue. N.T., 8/23/17, at 56, 64, 66, 97, 117, 130. The police also recovered prescription medication bottles with Richardson's name and his leather jacket from the front bedroom, *id.* at 62, 95, and found Richardson's wife sleeping in the bedroom. *Id.* at 184. The police found Richardson and his father sleeping in the rear third-floor bedroom. *Id.* at 53. Richardson claimed that he only sometimes stayed at the house. *Id.* at 155-56.

The police arrested Richardson and charged him with the above-referenced offenses. The charges were based on the narcotics, paraphernalia, and firearm found while executing the search warrant. Information, filed 6/27/16. Richardson filed a motion to suppress, claiming the search warrant was not supported by probable cause. He further filed a motion to disclose the identity of the CI. The trial court denied the motions.

*Commonwealth v. Richardson*, 294 EDA 2018, unpublished memorandum at 2-3 (Pa.Super. filed Mar. 26, 2019).

After he was convicted and sentenced, Richardson filed a timely direct appeal. This Court affirmed on March 26, 2019. Richardson did not seek review with the Pennsylvania Supreme Court and therefore Richardson's judgment of sentence became final in April 2019. He filed his instant timely

- 3 -

*pro se* PCRA petition, his first, in March 2020. The PCRA court appointed counsel who filed a no-merit letter[4] and request to withdraw. The court granted appointed counsel's request to withdraw on May 14, 2020.

Thereafter, Richardson obtained private counsel who filed an amended PCRA petition, and in August 2020, the court issued Pa.R.A.P. 907 notice of intent to dismiss the petition without a hearing. PCRA counsel filed a response requesting a hearing. The PCRA court granted the request and at a hearing in November 2020, Richardson presented the testimony of his trial counsel Anthony Hassan. The court ultimately denied Richardson's PCRA petition. Richardson obtained new counsel who filed the instant timely appeal. The PCRA court and Richardson both complied with Pa.R.A.P. 1925.

Richardson raises the following issues:

I. Whether trial counsel (Anthony Hassan, Esq.) was constitutionally ineffective for abandoning his client and failing to file post sentence motions?

II. Whether trial counsel was constitutionally ineffective for failing to file a motion to preclude admission of text messages on the grounds that admission violated the marital privilege, and violated the rule that text messages must be properly authenticated?

III. Whether the state violated the due process clause of the constitution of the United States, the ***Brady*** rule, and/or ***Commonwealth v. Bagnall***, 235 A.3d 1075 (Pa. 2020) when it failed to disclose the video surveillance of 125 East Union Street, West Chester, PA?

---

[4] ***See Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

Richardson's Br. at 2.

We assess an order denying PCRA relief under a well-settled standard of review. Our task is to determine whether the conclusions of the PCRA court are "supported by the record and free of legal error." *Commonwealth v. Anderson*, 234 A.3d 735, 737 (Pa.Super. 2020) (citation omitted).

Richardson claims, in all three of his issues, that his trial counsel was ineffective. A petitioner who raises a claim of ineffective assistance of counsel must overcome the presumption that counsel is effective. *See Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015). To do so, the petitioner must plead and prove all of the following: "(1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner." *Id.* (citation omitted). "Failure to prove any prong of this test will defeat an ineffectiveness claim." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014).

In his first issue, Richardson argues that his trial counsel was ineffective for failing to file post-sentence motions on his behalf. He contends that although Hassan testified that Richardson told him that other counsel would be filing post-sentence motions, Hassan should have known that as counsel of record it was his responsibility to file such motions within 10 days of the imposition of sentence. Richardson avers that Hassan's failure

to file post-sentence motions prejudiced him by preventing him from challenging the sufficiency of the evidence and the weight of the evidence.

A defendant claiming counsel was ineffective for failing to file a post-sentence motion must prove prejudice to obtain relief. ***Commonwealth v. Liston***, 977 A.2d 1089, 1092 (Pa. 2009); ***Commonwealth v. Reaves***, 923 A.2d 1119, 1127–32 (Pa. 2007). Further, a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. ***See*** Pa.R.Crim.P. 607.

In this case, the trial court properly concluded that Richardson failed to prove that his trial counsel was ineffective for failing to file post-sentence motions. First, as noted by the trial court, Richardson did not meet the first prong of the ineffectiveness test by establishing that his claim had underlying merit. ***Mason***, 130 A.3d at 618. While he is correct that his weight claim was not preserved because a post-sentence motion was not filed on his behalf, he fails to explain either the factual or legal basis his trial counsel would have had to file a motion challenging either the weight or the sufficiency of the evidence. As such, Richard failed to prove not only arguable merit but also prejudice. ***See id.*** Richardson's first issue lacks merit.

In his second issue Richardson maintains that his trial counsel was ineffective for failing to file a motion to suppress certain text messages. He claims that text messages between his wife and himself were not properly admissible because they were protected by marital privilege. Richardson

acknowledges that the court admitted the hostile text messages to provide an explanation regarding why Richardson and his wife were not found sleeping in the same bedroom, which contained the contraband at issue. He also avers that his trial counsel should have objected to the admission of the messages because they were not properly authenticated because the Commonwealth presented no testimony that he was the sender of the messages.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. **See Commonwealth v. Belknap**, 105 A.3d 7, 9-10 (Pa.Super. 2014). An abuse of discretion occurs where there is an "overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record." **Id.** at 10 (citation omitted).

In Pennsylvania, a spouse cannot testify in a criminal proceeding about confidential communications from one spouse to the other during the marriage, absent consent of the other spouse:

§ 5914. Confidential communications between spouses –

Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S.A. § 5914; **Commonwealth v. McBurrows**, 779 A.2d 509, 514 (Pa.Super. 2001) (*en banc*).

However, the privilege does not shield written correspondence between spouses that the prosecution obtained from an independent third party, and not from the defendant's spouse. ***See Commonwealth v. Skibicki***, 586 A.2d 446, 449-50 (Pa.Super. 1991) (holding letter defendant had written to wife was admissible at trial where the letter was left in a car and a third party produced it). ***But see Commonwealth v. Fisher***, 70 A. 865 (Pa. 1908) (holding letters from defendant husband to wife could not "be produced by the wife and offered into evidence as coming from her," as violative of marital privilege).

In this case, the police discovered the text messages at issue while searching Richardson's phone pursuant to a valid warrant. ***See*** PCRA Ct. Op., 12/21/20, at 10. The Commonwealth thereafter introduced the messages at trial to demonstrate the hostile relationship the couple had at the time he was found sleeping in a separate room away from his wife and the contraband. The Commonwealth did not receive the text messages from Richardson's wife but instead from law enforcement due to a criminal investigation. Therefore, the text messages were properly admissible at trial. Accordingly, Richardson's trial counsel cannot be deemed ineffective for failure to object to the admission of the messages on the basis of the marital privilege, because the underlying claim had no merit. ***See Mason***, 130 A.3d at 618.

Richardson also claims that his trial counsel was ineffective for not objecting to the admission of the text messages because the Commonwealth

failed to properly authenticate them. He contends that the Commonwealth did not provide any proof that he was the author of the messages. Richardson cites **Commonwealth v. Koch**, 39 A.3d 996, 1005 (Pa.Super. 2011), *affirmed by an equally divided court*, 106 A.3d 705 (Pa. 2014), for the proposition that access to a device alone does not prove that an individual is the author of text messages.

For evidence to be admissible, it must be properly authenticated. Pa.R.E. 901(a); **see Commonwealth v. Talley**, 236 A.3d 42, 59 (Pa.Super. 2020). To achieve authentication, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Pa.R.E. 901(a). Such evidence can be purely circumstantial evidence. Pa.R.E. 901(b). "A proponent of a document need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder." **Gregury v. Greguras**, 196 A.3d 619, 633 (Pa.Super. 2018) (*en banc*) (citation omitted).

"[E]mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally." **Koch**, 39 A.3d at 1004. The question of the admissibility of electronic communication must be "evaluated on a case-by-case basis as any other document to determine whether or not there has been an adequate foundational showing of their relevance and authenticity." **In re F.P.**, 878 A.2d 91, 96 (Pa.Super. 2005).

Here, we conclude that **Koch** is factually distinguishable. In that case, the Commonwealth admitted that the messages at issue were likely written by multiple individuals, not just the defendant. **Koch**, 39 A.3d at 1003-05. Therefore, if the messages at issue there were admitted, the jury would be misled and/or confused about their origins. **Id.** Conversely, in the instant case the trial court aptly noted the circumstantial evidence was sufficient to meet the low threshold of authentication:

> Detective Battista testified at trial that he discovered an LG cell phone in the front right pocket of a brown leather jacket recovered from the third floor, front bedroom. This leather jacket belonged to [Richardson]. [Richardson] indicated to Detective Battista that the jacket was his along with anything in the pockets. Detective Battista further testified as to the text messages discovered on [Richardson's] cell phone. Indeed, in at least two messages, the author identifies himself as [Richardson], and attaches photos of himself.

PCRA Ct. Op., 12/21/20, at 13 (record citations omitted).

We conclude that the text messages here had ample evidence supporting the PCRA court's determination that the messages were properly authenticated. **See In re F.P.**, 878 A.2d at 96; **Murray**, 174 A.3d at 1157. Therefore, trial counsel was not ineffective for failure to object to the admission of the messages on the basis of authentication. There is no merit to the underlying contention. **See Mason**, 130 A.3d at 618. Hence, Richardson's second issue also warrants no relief.

In his third issue, Richardson argues his trial counsel was ineffective for failing to allege a **Brady** violation.[5] He points to testimony during trial that police had surveillance video of the outside of the Union Street property where Richardson and the contraband were found.[6] Richardson asserts that trial counsel was ineffective in failing to request a copy of the videotape because "the videotape could have been used by a skilled lawyer to show that many people had access to the property, and could have planted the evidence used to convict [Richardson]." Richardson's Br. at 20.

"[T]o establish a **Brady** violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." **Commonwealth v. Spotz**, 47 A.3d 63, 84 (Pa. 2012) (citation omitted). As to **Brady** claims advanced under the PCRA, a defendant must demonstrate that the alleged **Brady** violation "so

_____

[5] While Richardson's question presented does not reference ineffective assistance of counsel, his argument is fashioned under that rubric. Therefore, we will address his issue by considering his contention that his trial counsel was ineffective in relation to a potential **Brady** violation.

[6] To the extent that Richardson argues that counsel was ineffective for not asserting a **Brady** violation in connection with a 911 call, such claim is waived due to his failure to include it in his Pa.R.A.P. 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived").

undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Ly***, 980 A.2d 61, 76 (Pa. 2009) (citation and internal quotation marks omitted).

In the instant case, the PCRA court concluded that the underlying ***Brady*** claim lacked arguable merit:

> The video did not show the cocaine sales. The video did not show any portion of the interior of the house where the search warrant was executed. The video merely would have shown confidential informant's entry and exit from the residence. [Richardson] argues that he may not have been charged with the controlled buys, but nevertheless, the jury was free to deem this evidence exculpatory if they chose. Notwithstanding the fact that this argument makes no sense, [Richardson] fails to meet his burden in establishing the favorability or materiality of such evidence. This evidence is neither favorable nor unfavorable to [Richardson]; rather, it is irrelevant for purposes of proving the crimes charged. Further, the burden of proof is not that the jury may have deemed such evidence as exculpatory, but that there exists a reasonable probability that the result of the trial would have been different. The mere possibility of a different outcome is insufficient. For these reasons, [Richardson] cannot establish that he was prejudiced by the Commonwealth's alleged suppression of video evidence. Thus, [Richardson's] ***Brady*** claim lacks arguable merit.

PCRA Ct. 1925(a) Op., 3/2/21, at 10-11.

We conclude that the record supports the court's determination that Richardson failed to establish that the video tape at issue was exculpatory in nature, let alone sufficiently prejudicial to find a reasonable probability that its production would have caused a different result at trial. ***See Spotz***, 47 A.3d at 84. As such, we once again hold that trial counsel was not ineffective for failing to raise a meritless claim. ***See Mason***, 130 A.3d at 618.

Accordingly, we affirm the PCRA court's order dismissing Richardson's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2021